## McCOY et al. v. PACIFIC SPRUCE CORPORATION.

(Circuit Court of Appeals, Ninth Circuit. October 20, 1924.)

No. 4295.

**1. Carriers ⊂═⇒4—"Common carrier" defined.**

A "common carrier" is one who, by virtue of his calling and as a regular business, undertakes to transport persons or commodities, offering his services to such as may choose to employ him and pay his charges.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Common Carrier.]

**2. Carriers ⊂═⇒4—Company not made common carrier by commission's order.**

A company not being in fact a common carrier, order of state Public Service Commission, declaring it such and regulating use of its property, is void.

**3. Carriers ⊂═⇒4—Right of way acquired by United States for war purpose not charged with public use.**

That right of way for a railroad, acquired by the United States during war to aid in spruce production, was taken by it under the war power or right of eminent domain, does not charge it and the road built thereon by such government with a public use, giving the public a right to demand a common carrier service.

**4. Carriers ⊂═⇒4—Road built by United States for war purpose not charged with public use by conveyance to corporation for same purpose.**

Conveyance by the United States of a right of way, acquired by it for war purpose, and a road built thereon by it, to a corporation organized, owned, and used by it for the same war purpose, did not charge the property with a public use.

**5. Carriers ⊂═⇒4—Road built by United States for war purpose not charged with public use by temporary permit to operate it.**

Railroad built by United States for war purpose of aiding spruce production was not charged with a public use by temporary gratuitous permit to operate it while corporation organized by the government was winding up its affairs after close of war.

**6. Carriers ⊂═⇒4—Road built by United States for war purpose not charged with public use by temporary operation under permission of purchaser.**

That purchaser, on close of war, of railroad built by United States for war purpose of aiding spruce production, consented to continuance for two months, till it was ready to begin

logging operations, of operation of road by an individual, begun under temporary permit from government instrumentality, did not charge the road with a public use.

Appeal from the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

Suit by the Pacific Spruce Corporation against Newton McCoy and others and the Public Service Commission of Oregon for injunction. Decree for plaintiff (294 F. 711), and defendants appeal. Affirmed.

I. H. Van Winkle and Wm. P. Ellis, both of Salem, Or., and L. A. Liljeqvist, of Portland, Or., for appellants.

McCamant & Thompson, and Ralph H. King, all of Portland, Or., for appellee.

Before HUNT and RUDKIN, Circuit Judges, and BOURQUIN, District Judge.

RUDKIN, Circuit Judge. There is no controversy over the facts in this case. Prior to the 10th day of October, 1918, the United States, through its authorized officers and representatives, constructed, in large measure, a railroad extending from Yaquina Bay, near South Beach, to the town of Waldport and for a distance of about 7½ miles beyond, in the state of Oregon. The railroad was constructed as a war measure, to aid in spruce production for war purposes. Later the United States Spruce Production Corporation was organized under the laws of the state of Washington, by authority of the Act of July 9, 1918 (40 Stat. 888), which authorized the Director of Aircraft Production to form one or more corporations under the laws of any state, for the purchase, production, manufacture, and sale of aircraft and equipment and materials therefor, and to own and operate railroads in connection therewith, whenever in his judgment it would facilitate the production of aircraft for the United States and the governments allied with it in the prosecution of the war. On October 10, 1918, the United States conveyed the railroad, a sawmill then under construction, and other properties, to the corporation thus formed, and the latter entered into immediate possession. When the Armistice was signed work on the railroad ceased, except in so far as the corporation deemed it necessary to continue it in order to wind up its affairs.

On May 29, 1919, the corporation granted one Doty a permit to operate the railroad from its north terminus to Waldport by the use of locomotives with flanged wheels, so constructed as to run upon the tracks and designed for the carriage of passengers and freight. Under this permit all rolling stock and equipment were to be furnished by the permittee, who, on his part, agreed to maintain the railroad and roadbed in good repair at his own expense, under the direction and supervision of the corporation, to reimburse the latter for any damage caused to the railroad or roadbed, and to return the property in as good condition and repair as at the time of its receipt. The permittee further agreed to comply in all things with the rulings and directions of the Public Service Commission of the state. The right to revoke the permit on one day's notice was expressly reserved; it being understood "that the corporation expects to advertise and to sell its railroad, and that the permit and license hereby granted is temporary in character, subject to revocation at any time, and that the corporation receives no consideration, benefit, or advantage from the operation of the railroad." This permit was revoked on December 19, 1921, but one Ashworth, who had operated the railroad under some arrangement with Doty, continued its operation until March 1, 1922, with the consent of the purchaser.

In the meantime, and on December 17, 1920, the United States Spruce Corporation entered into a contract with the Pacific Spruce Corporation, whereby the former agreed to sell and the latter agreed to buy the railroad, the sawmill, and other properties. By the terms of this contract the vendor retained title until the purchase price, extending over a long period of years, was fully paid. Upon the execution of the contract the purchaser entered into immediate possession of the properties, and, in operating the railroad, agreed to comply with all laws and lawful regulations. On March 1, 1922, the purchaser began active logging operations, and discontinued such common carrier service as had theretofore existed under the Doty permit and thereafter. A hearing was thereupon held, and the Public Service Commission of the state declared the Pacific Spruce Corporation to be a common carrier, subject to its jurisdiction, and required it to maintain and operate one combination baggage and passenger car, with necessary motive power and facilities for carrying freight, triweekly, from South Beach to Waldport and intermediate points. The Pacific Spruce Corporation thereupon instituted this suit against the commission to enjoin the enforcement of the order, and from a final de-

cree in its favor the commission has appealed.

[1, 2] A common carrier is generally defined as one who, by virtue of his calling and as a regular business, undertakes to transport persons or commodities from place to place, offering his services to such as may choose to employ him and pay his charges. Anderson v. Smith-Powers Logging Co., 71 Or. 276, 139 P. 736, L. R. A. 1916B, 1089. If the appellee is not a common carrier as thus defined, it must be conceded that the order of the Public Service Commission declaring it such and regulating the use of its property is null and void. The claim that it is a common carrier is based upon the following contentions: That the right of way for the railroad was taken by the government under the war power or the right of eminent domain, and property thus acquired is charged with a public use and gives the public a right to demand a common carrier service; that, while the United States Spruce Production Corporation was owner of the railroad, it charged it with a common carrier use, and that use followed it into the hands of the appellee, as purchaser; and that the appellee itself devoted the railroad to a public use and is now under obligation to maintain the common carrier service.

[3, 4] The claim that property acquired by the United States during the war, for war purposes, was charged with a public use in the hands of the government, cannot be maintained. The property was acquired for a particular purpose and the government had an unquestionable right to devote it to that purpose to the exclusion of every other. Its right and power to control and manage its own property in its own way rest upon the supremacy of its authority, and are neither limited nor controlled by the mode of acquisition. This would seem both elementary and fundamental. Nor did the conveyance to the United States Spruce Corporation change the situation. As said by the Supreme Court, in Clallam County v. U. S., 263 U. S. 341, 44 S. Ct. 121, 68 L. Ed. 328:

"In short, the Spruce Production Corporation was organized by the United States as an instrumentality for carrying on the war, all its property was conveyed to it by or bought with money coming from the United States, and was used by it solely as means to that end, and when the war was over it stopped its work, except so far as it found it necessary to go on in order to wind up its affairs."

[5, 6] Within less than a month after the conveyance was made the war ended; the corporation ceased to be an instrumentality for carrying on the war, and became a mere agent to wind up its own affairs, preparatory to going out of existence. For these reasons we are clearly satisfied that the railroad was charged with no public use while owned by the government and the Spruce Corporation. Nor did the temporary permit to operate the railway change its entire character. The permit was granted without consideration for a temporary purpose, as part of the winding-up process, and to hold that it had the broad effect now claimed for it would do violence to the intentions of all concerned. The same must be said of the temporary use made of the property after the appellee came into possession as purchaser.

Such were the conclusions of the court below, and its decree is affirmed.