**Mary Jane Beard, Appellee, v. Haskell Park Building Corporation, Appellant.**

**Gen. No. 7,819.**

468

Opinion filed April 11, 1928.

NORTH, LINSCOTT, GIBBONEY & NORTH, for appellant.

KNIGHT & SWENSON, for appellee.

Mr. Justice Jones delivered the opinion of the court.

This suit was brought to recover for goods stolen from a trunk stored by plaintiff in the trunk room of an apartment building owned by defendant. A jury returned a verdict for plaintiff in the sum of $942. From a judgment on the verdict this appeal is prosecuted.

Appellant is a corporation, owning and operating a 5-story brick apartment building at the corner of two intersecting streets in the city of Rockford. The first floor of the building is divided into three storerooms, a lobby, and janitor's quarters. The house hostess in the lobby could see anyone coming into the building from either of the two street entrances, her duty being the care of the service within the building. Any package coming or going would first have to come to her attention. There is a service entrance in the rear of the building directly opposite the janitor's living room. It opens onto a stairway leading to the basement. The trunk room is in the basement and to reach that room it is necessary to pass the janitor's room and either the boiler room or the workroom where repairs are made.

The janitor, with his wife, lived in the building a short distance from the trunk room, and from his room it was possible to hear anyone walking to the trunk room. Either the janitor or his wife were always there in the daytime. His duties were to take care of the boiler and basement and do odd jobs. He acted as watchman and custodian of the trunk room. He testified that the door of the trunk room was always locked at night, and sometimes in the daytime; that as a part of his duties, he always watched the trunks and people who came around there. The key to the trunk room door became lost, but it is not clear whether it was lost before or after the contents of the trunk were stolen. He also testified that the room was always locked at night with another key.

Plaintiff, a school teacher in Rockford, was preparing to leave the city for the summer, following the close of the school term in June, 1926. Desiring to obtain an apartment in appellant's building for the next school term, she and her friend, Lois Morris, called on appellant's agent, Johnson, about June 1st. The next day a written lease for the apartment, dated June 2, 1926, was executed between the parties for a term to commence August 31, 1926, and ending June 17, 1927, at a rental of sixty-five ($65) dollars per month. The lease contains no reference to the storage of trunks or other articles. She paid $20 on the rental of the apartment to Johnson, before the execution of the lease, and it was credited on the first month's rent. The balance of the rent for that month was paid August 30th. She and Johnson had a conversation about the storing of her trunk during the summer months. She testified that after she paid the $20 but before the lease was signed, she told Johnson she had some things she wanted to store, and asked him if he had a place; that he replied there was a storeroom and that she was perfectly welcome to store her things in it. In this she is corroborated by Miss Morris.

Johnson testified that at the time the lease was entered into, no arrangement was made for the storage of any trunk, but that about 10 days or two weeks afterwards, Miss Beard called him by telephone and asked if she could keep her trunks in the apartment for storage during the summer; that he asked her if there was anything in the trunks, and she replied there was nothing of any value; that he explained that there was a storage room in the building for the storage of empty trunks but that the company would assume no liability for the loss of any contents of a trunk. This is denied by appellee. Johnson also testified that at the time he had the conversation with appellee and Miss Morris, he explained the custom about the use of the building and the service furnished, and that the

rental was paid for the use of the apartment only. Miss Beard testified that she sent her trunk to the building on June 19, 1926; that she followed it about two hours afterwards, and went down to the storeroom with the janitor; that the trunk was standing on end and she asked him to set it down because it was not packed tight; that he did so and then showed her out, locking the door after them; that she saw a number of trunks and other things in the room, but particularly noticed only the trunks.

It is conceded by both parties that the maids employed by appellant used the storeroom for their pails and equipment; that only empty trunks were ordinarily stored there, and that the contents of plaintiff's trunk were stolen after it was stored. Appellee's itemized statement of the articles that she claims were in the trunk includes a solid gold watch, four pairs of earrings, five rings, one large necklace, a bracelet, two strings of beads, two bar pins, a jewel case and other articles, besides expensive wearing apparel. She placed their aggregate value at $942 and stated that that was less than she paid for them. The necklace and two of the rings are alleged to be heirlooms and two of the dresses are valued at $80 each.

Besides the jaintor and house hostess, appellant employed two maids. The reputation of each of them for honesty was good. One of the maids was superintendent of a Sunday school and the other was a leader of a church choir. The janitor and house hostess had been in appellant's employ for several years, and appellant took the precaution to make special inquiry as to the reputation of the maids.

The record does not show, and appellee does not claim, that she gave appellant any information whatever that her trunk contained heirlooms, jewelry, and expensive wearing apparel. According to her own testimony, she merely asked to store some "things." We think the evidence shows sufficient facts known to

appellee to bring notice to her that the character of the storage was not such as to warrant her in placing valuables worth almost $1,000 in a trunk and leaving it there for storage without apprising appellant of the true character and value of the articles.

In her brief, it is intimated that the storage of her goods was incident to the operation of the building as an apartment hotel and was one of the services for which she was to pay. There is no evidence in this case to warrant the assertion that the building was operated as a hotel or that appellee so considered it. It is clearly shown by the testimony that it was an apartment building and that she knew it. The earnest money on the lease, according to her testimony, was paid before she asked permission to store her things, so that the storage was not contemplated in the leasing of the apartment. She treated the permission as a gratuity and under such circumstances the law raises the presumption that she knew the degree of appellant's liability incident thereto. She saw the character of the storage room when she left her trunk there.

She takes the position that leaving the door unlocked in the daytime was gross negligence, in that the maids and employees had access to it. A storage room located in the basement of an apartment house near the boiler room and in which the maids kept their pails, mops and other utensils, would not appear to an ordinarily prudent person as a safe or proper place to keep jewelry and expensive clothing worth nearly $1,000. She did not inform appellant that the contents of her trunk were of any great value. The record does not tend to show that the maids and employees, who had access to this room, had anything whatever to do with the disappearance of the contents of plaintiff's trunk.

We think it unimportant under the facts in this record, whether the situation discloses a gratuitous

bailment or one for the benefit of both parties. It is well settled that a bailee for hire is not an insurer but owes the bailor a duty of ordinary care. As bailee, appellant was bound to exercise such care and diligence as every prudent man takes of his own goods of like character. Ordinary diligence means that degree of care, attention or exertion, which under the circumstances, a man of ordinary prudence and discretion would use in reference to the particular thing, were it his own property. Where the bailor has shown the goods were received in good condition by the bailee and were not returned to the bailor on demand, the bailor has made out a case of prima facie negligence against the bailee, and the bailee must then show the loss or damage was caused without his fault. The effect of this rule is not to shift the burden of proof from plaintiff to defendant, but simply the burden of proceeding. The bailor in all instances must prove that the bailee was negligent; but when he shows that the goods which he intrusted to the bailee's care were not delivered upon demand, he has made out a prima facie case or created a presumption of negligence, which the bailee may overcome by offering evidence to show that he was not negligent. (*Rhodes v. Warsawsky,* 242 Ill. App. 101; *Miles v. International Hotel Co.,* 289 Ill. 320.) It is also the rule that where the failure to deliver is explained by the fact that the goods have been stolen, or destroyed by fire, and the bailee is no longer able to deliver them, the law will not presume negligence, and the onus or burden of proving the same is upon the bailor. The mere fact that a bailee's servant stole the property does not cast upon the bailee the burden of showing want of negligence in selecting and keeping such servant, but the burden is on the bailor to show negligence in this respect on the part of the bailee. (*Rhodes v. Warsawsky, supra.*) The servants employed were of good reputation, and it is not disputed that they were com-

petent and trustworthy. Miss Beard testified that after the loss she heard a conversation in which a representative of appellant told the janitor that the maids had no business in the storeroom; that their things should be removed; and that he also told the janitor he should have placed a padlock on the door, when he was told of the loss of the key. She urges that this shows appellant admitted its negligence. The fact that maids of good reputation had access to the room in the daytime, when the janitor was there or in the vicinity, does not tend to show negligence. The loss of one of the keys is not sufficient to show negligence on the part of appellant in protecting a room for the storage of supposedly empty trunks. But however that may be, there is no evidence to show that the key was lost before and not after the goods were stolen. We do not think the record in this case warrants a recovery by the plaintiff and the trial court should have directed a verdict for the defendant.

The sixth instruction given on behalf of appellee informed the jury that where goods are intrusted to a bailee and he does not return them upon demand, then the bailor has made out a prima facie case of negligence. The instruction is not only an abstract proposition of law, but as applied to the facts in this case was incorrect and has been repeatedly held to be reversibly erroneous. In a case, as in this one, where evidence is offered tending to rebut the presumption of negligence, no prima facie case thereafter exists and no instruction as to what constitutes a prima facie case or as to its effect should be given. (*Johnson v. Pendergast,* 308 Ill. 255; *Grosh v. Acom,* 325 Ill. 474; *People v. Tate,* 316 Ill. 52.)

Appellee's eighth instruction told the jury that in case of failure to deliver a bailed article upon demand, the law presumes negligence on the part of the bailee, and imposes upon him the burden of showing he exercised such care in respect to the property as was

required by him under the circumstances surrounding the bailment. The presumption of negligence arises where a bailee does not account for the loss either by fire or theft, or does not show that the loss was a mystery. But where the failure to deliver is explained by the fact that the goods have been stolen or destroyed by fire, the law will not presume negligence and the onus or burden of proving the same is upon the bailor. (*Rhodes v. Warsawsky, supra.*) The instruction was not a correct statement of the law applicable to this record.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*