**Langendorf Clothing Company, Plaintiff in Error, v. V. J. Fara, Defendant in Error.**

**Gen. No. 36,430.**

Opinion filed October 25, 1933.

CHARLES H. KAPLAN and STEPHEN F. RIORDAN, for plaintiff in error; CLYDE C. FISHER, of counsel.

No appearance for defendant in error.

MR. JUSTICE WILSON delivered the opinion of the court.

This action was brought by Langendorf Clothing Co., against Fara to recover damages for the loss of a box of clothing which was being conveyed by the defendant under a cartage contract.

From the facts it appears that the truck of the defendant in which the goods were being conveyed was stolen and the goods of the plaintiff lost. Plaintiff proved the delivery of the goods to the defendant, their loss and the damages sustained.

Sam Langendorf, secretary and treasurer of the Langendorf Clothing Company, testified that the defendant had conveyed merchandise for plaintiff, previous to the time in question upon numerous occasions and that he had a conversation with Fara, the cartage contractor, in which he told Fara that he was afraid of a holdup and that the driver was never to leave the truck while hauling goods for the plaintiff. Langendorf testified further that Fara was told that they did not like the

driver Whitey. Fara replied that the driver Louie would be back in a few days and would, thereafter, be in charge of plaintiff's merchandise. Langendorf further testified that he told Fara that the driver was to go directly to the freight house with the goods so that they could be shipped from that point. He also testified that he told Fara that he carried insurance but it was necessary for the goods to be conveyed in the manner in which he had outlined.

Fara testified in his own behalf and denied Langendorf had told him to haul all of the goods to the freight house and not to the junction; that there was never any objection to delivering freight to the junction instead of directly to the freight house. Fara also testified that previous to this robbery he had told the Langendorf Company that he did not want their business as he did not wish to assume the responsibility, but that Langendorf said: "Suppose I insure it and you will not be liable for anything?" To which Fara testified he replied that if Langendorf felt that way about it it would be all right as then he would not have to worry about the goods.

Louie, the driver for defendant, testified that he talked with Langendorf at the time the clothing was delivered to him and was told that the clothing was insured; that the plaintiff refused to send a man with him on the trip and that he told Langendorf that he was taking the goods to the junction and not to the freight house and was told that was all right because they were insured. The witness further testified that he told Langendorf it was 11:30 a. m. and the junction closed at noon and he could not reach there before then; that he would have to have his lunch at 12 o'clock, whereupon Langendorf told him to go ahead with the cases. The witness further testified that Langendorf had always provided a man to go along with him to remain on the truck upon all previous occasions when he had

received goods from the plaintiff to be delivered to the railroad.

From the evidence it appears that the goods were delivered to Louie, the driver for the defendant, the man whom the plaintiff insisted should be in charge of the delivery. This driver stopped at the place of business of the plaintiff about 11:30 o'clock in the morning, picked up a case of clothing and started on his trip. He had five or six different freight stops but could not make his destination before 12 o'clock, at which time the junction where freight was received was closed. The driver thereupon stopped his truck in front of a restaurant for about 15 minutes, during which time he had something to eat. When he came out the truck was gone. According to the police report the theft occurred near Ogden and Western avenues in Chicago.

Plaintiff insists that even though the testimony of the defendant Fara were true, namely, that plaintiff had agreed to carry insurance and absolve the defendant from responsibility, nevertheless, the defendant cannot waive his own negligence and that his duty as bailee for hire was still that of a bailee and required him to exercise that care of the bailment which the law required. It is also insisted that under the rules laid down in *More v. Fisher,* 245 Ill. App. 567, and *Erickson v. Graham & Daniel Co.,* 227 Ill. App. 390, that it was negligence to leave the truck in a congested retail section of a large city.

The statement of claim filed by the plaintiff charges that the defendant was a common carrier. There is, however, no evidence in the record proving this to be a fact. A common carrier is one who holds himself out to the public as a carrier of goods for any person or corporation who desires to use such service. A private carrier is one who does not hold himself out to the public but one who carries goods under a special or private arrangement. Unlike the common carrier he is not an

insurer unless he has made himself so by a special contract and he is, therefore, like any other ordinary bailee, liable for loss of, or damage to, the goods only when it is due to his negligence. Doble on Bailments and Carriers, 1914 Ed., Part II, ch. IX, sec. 106; *Rathbun v. Ocean Accident & Guarantee Corp., Ltd.*, 299 Ill. 562.

Counsel for plaintiff has treated the subject as that of the liability of a private carrier, but insists that the defendant cannot absolve himself from his own negligence even as a private carrier. Under the old common law rule, a bailee was not liable for theft, acts of God or the public enemy or where the goods were taken by violence. This rule, however, has been modified, but the bailee is still not liable for theft unless this occurred through his own negligence. Ruling Case Law, Vol. 3, section 23 (Bailments), lays down the following rule:

"23. WHAT CONSTITUTES ORDINARY CARE.—As has been heretofore suggested, where the relation of bailor and bailee for hire or mutual benefit subsists, it devolves on the bailee to use ordinary care and diligence in the safeguarding of the bailor's property. If it is lost through a failure to observe such duty, he is answerable, but of course he is not responsible for any losses not occasioned by the ordinary negligence of himself or his servants; he will not, therefore, be liable for any loss by thieves, or for any taking from him or his servants by force, or where the owner accompanies the goods to take care of them and is himself negligent. Ordinary care means such care as ordinarily prudent men, as a class, would exercise in caring for their own property under like circumstances, or, as it has been sometimes expressed, when applied to such bailees as make a business of keeping property for hire, as depositaries or warehousemen, that degree of care and diligence which may reasonably be expected from or-

dinarily prudent persons under similar circumstances, or that which business men, experienced and faithful in the particular department, are accustomed to exercise when in the discharge of their duties." See also *McKnight v. Batrick* (Mo. App.), 49 S. W. (2d) 277.

What constitutes ordinary care depends upon a number of questions. In a case similar to the one before us a jury would have a right to consider the value of the goods, the length of the haul, the character of the neighborhood where the theft occurred, the manner in which the goods were being conveyed, the price paid for the service, and all the facts and circumstances bearing upon that question. 6 Corpus Juris (Bailments), sec. 58, p. 1119.

In the case of a mutual bailment, the parties have a right to make arrangements between themselves as to the manner in which the bailee shall perform. The Supreme Court of this State in the case of *Jacobs v. Grossman,* 310 Ill. 247, in its opinion, says:

"Whatever may be the right of the parties in a bailment for the mutual benefit of the bailor and the bailee, it is unquestionably the law that the parties may increase or diminish these rights by stipulations contained in the contract of bailment. (30 Cyc. 1167; *St. Losky v. Davidson,* 6 Cal. 643.)"

In considering the question of negligence, therefore, the jury had a right to consider and weigh the testimony of the driver of defendant to the effect that he was alone with the truck and that he was taking the goods to the junction and not to the freight depot and that the junction would be closed at noon and that it would be necessary for him to eat his lunch, and that this was known to the bailor. This would, necessarily, result in the leaving of the truck in the street for a short period of time during the conveyance of the goods in question. The jury in arriving at its verdict had a right to consider the question as to whether or not

plaintiff consented to this arrangement, if they believed the testimony of the driver, namely, that under the circumstances Langendorf told him to go ahead.

An examination of the case of *Erickson v. Graham & Daniel Co.,* 227 Ill. App. 390, discloses that the truck of the defendant was parked at 310 South State street and that this was a very busy retail section in the City of Chicago. This court in that case affirmed a judgment in favor of the plaintiff and it was not necessary to the decision to find that the parking of the truck in question was highly imprudent. In that case it appears that the court relied upon *Siegel v. Eisner,* 138 N. Y. S. 174, as its authority and we find upon examination that that was a decision of the municipal court of New York City, which was a court of first instance.

From an examination of the case of *More v. Fisher,* 245 Ill. App. 567, we find that the case was tried in the first instance by a court without a jury and that as the evidence was uncontradicted, the Appellate Court undertook to do that which it found the trial court should have done and reversed the case with a finding of fact. In that case goods were delivered to the bailee, a cleaner and dyer, for the purpose of having the goods taken to the defendant's place of business and after service performed were to be redelivered to the plaintiff.

In the case at bar the question as to whether or not the defendant was guilty of negligence, under all of the circumstances, was one of fact for the jury. By its verdict the jury found the defendant was not guilty of the negligence charged but that he was exercising that degree of care which was required of the defendant as bailee. In this connection it had the right and probably did consider the special private arrangements between the parties, under which the defendant was to be absolved from any loss by reason of theft. We are unwilling to say as a matter of law that the mere fact of the delivery of goods by the plaintiff to defendant and their loss by theft was negligence which would

necessitate a recovery. It is not unusual for drivers of trucks to leave their machines for a short time while they make deliveries of goods. The question being one of fact for the jury which it has resolved in favor of the defendant, and the testimony being conflicting, we are unable to substitute our opinion for that of the trial court and the jury who heard and saw the witnesses and were in a better position to pass upon their credibility than would this court on review.

It is insisted that certain portions of the instructions to the jury were erroneous. The record, however, fails to disclose any objections taken at the time. The instruction to the jury was delivered orally by the court under Rule 8 of the municipal court which was in force at the time of the trial. It has been held that such an oral instruction is proper. *Morton v. Pusey*, 237 Ill. 26. It is also the rule that an oral charge given by the court is not subject to review on appeal in the absence of objections or exception. *Scott v. Chicago Binder & File Co.*, 170 Ill. App. 391. This court is, therefore, precluded from considering this alleged error.

We see no reason for disturbing the verdict and the judgment of the municipal court is, therefore, affirmed.

*Judgment affirmed.*

HALL, P. J., and HEBEL, J., concur.