Beatrice Creamery Company, Appellant, v. Harold Fisher and Kenneth DeLong, Appellees.

Gen. No. 9,044.

Heard in this court at the January term, 1937. Opinion filed April 16, 1937. Rehearing denied October 5, 1937.

Dobbins, Dobbins, Barr & Thomas, of Champaign, for appellant; James A. Solon, of Champaign, and John J. Bresee, of counsel.

Green & Palmer, of Champaign, and Lord, Lloyd & Bissell, of Chicago, for appellees; Henry I. Green, of Champaign, C. E. Stone, of Peoria, L. Duncan Lloyd and Burnham M. Fisk, both of Chicago, of counsel.

Mr. Justice Riess delivered the opinion of the court.

This is an appeal by the plaintiff from a judgment entered in the circuit court of Champaign county in favor of the defendants, upon trial of the case without a jury.

The action is one of assumpsit to recover for the loss of a cargo of butter and eggs, which was loaded on a truck owned by the defendants, on October 12, 1933, to be transported from Champaign, Illinois, to New York City and Worcester, Mass. While the truck was traveling near Reynold, Indiana, the drivers were forcibly taken from the truck by four armed men. The truck was found abandoned and was recovered northwest of Chicago about three days later, but the entire cargo was gone.

It is contended by the plaintiff appellant that: (1) The defendants were common carriers, and as common carriers were liable as insurers of the cargo in question. (2) If the relationship between the plaintiff and defendants was only that of bailor and bailee, as private carriers, the defendants are still liable for the loss of the cargo for the reason that they failed to show a valid legal excuse for nonperformance of their contract to deliver the shipment to its place of destination.

The defendants, Harold Fisher and Kenneth De-Long, were engaged in the carriage of goods and chattels from and to Champaign, Illinois, by motor

truck. It appears from the evidence that they solicited business from several concerns.

When a contract for hauling was entered into, they agreed with the prospective customer on rates. When a cargo was hauled to New York, the defendants usually arranged to bring back a cargo of goods from some eastern concern.

The plaintiff first began shipping by the defendants' trucks in September, 1932, and the carrying charges were determined by using the approximate railroad rate in force at the time of shipment. The defendants carried cargo insurance, but inasmuch as their trucks were mortgaged, the plaintiff insisted that the various cargoes be insured in the name of the plaintiff against loss from any cause, and that the defendants pay the premium on the insurance policy out of the carrying charges. The trips by the defendants were made at about weekly intervals, each transaction being a separate contract; the whole freight charge being paid in advance, and the plaintiff insuring each cargo, and deducting the premium from the amount paid to the defendants from the transportation charges agreed upon.

Whether or not the defendants were common carriers was a question of fact, dependent upon the nature of the business in which they were engaged, and was to be determined from a consideration of all of the evidence.

The manager of the plaintiff company testified that the defendants talked with him about transporting plaintiff's butter and eggs to Boston and New York by truck. After some negotiation, the plaintiff consented to try this method of shipping its produce, and made a contract with the defendants whereby they were to transport a load of goods to a designated point. Each time the defendants took a cargo for the plaintiff, a special contract for its carriage was entered into by

the parties. When a cargo was hauled for the plaintiff, no other goods were hauled for any other person. In other words, the defendants did not hold themselves out to carry for the public generally. They only operated their trucks when they had a special contract to do so, and they maintained no fixed rates nor published schedules. In order to have a load to carry on the return trip to Champaign, the defendants entered into contracts at different times with eastern companies to carry certain goods for them to Chicago, and in several instances for other consignors to other points under special contracts only. The charges made for hauling for these companies depended on the agreement reached between the defendants and the company. On the front of the trailer appeared the words: "Fisher and DeLong, Champaign, Illinois, Chicago, Boston, New York." In the State of Ohio they were required to take out a license as carriers on the State highways over irregular routes, but never picked up nor delivered any goods nor transacted any business in that State. They were neither required to nor did they have license as public carriers in Illinois or any other State. They refused on several occasions, when so requested, to carry suitcases or parcels for students and other persons on their trips. The defendants had no freight station or loading depots, either in Champaign or any other place where the goods might be delivered. The route over which they operated had no fixed termini, and they followed no definite route.

When the plaintiff affirms and the defendant denies that the defendant is a common carrier, the question becomes a controverted question of fact to be determined by a consideration of the evidence by the trial court. *Rathburn v. Ocean Acc. & Guar. Corp., Ltd.*, 299 Ill. 562; *Bare v. American Forwarding Co.*, 242 Ill. 298; *Hinchliffe v. Wenig Teaming Co.*, 274 Ill. 417.

It is contended by the plaintiff that if one is a common carrier, the mere fact that he charges different

rates for different cargoes will not make him a private carrier, nor will he cease to be a common carrier when he does not make a regular trip between fixed termini, nor will the fact that he hauls only certain goods, such as coal, grain, or some other commodity, change his status from a public carrier to a private carrier. While some of these elements may appear in a given case, it remains that each case must be decided in the light of all the surrounding facts and circumstances in evidence.

When a carrier does not maintain either published rates or schedules, regular trips, fixed termini, or freight depots, and refuses divers shipments offered, it is persuasive evidence that he does not hold himself out to serve the public generally.

The trend of authorities in Illinois holds that a common carrier is one who undertakes for the public to transport from place to place such persons or the goods of such as choose to employ him for hire. *Transformer Corp. of America v. Hinchliffe*, 279 Ill. App. 152; *Rathburn v. Ocean Acc. & Guar. Corp., Ltd., supra; McCusker v. Curtiss Wright Flying Service, Inc.*, 269 Ill. App. 502.

The real test is whether or not the carrier serves all of the public alike, who apply to him for carriage. This distinction is thoroughly discussed in the case of *Rathburn v. Ocean Acc. & Guar. Corp., Ltd., supra*, and authorities cited therein.

In the instant case the cargo in question was being transported by the defendants under a special contract with the plaintiff, which provided for the carrying of insurance by the plaintiff at the cost of the defendants. Upon considering all of the facts and circumstances in evidence, we are constrained to hold that the trial court did not err in finding that the defendant was not acting as a common carrier but was acting as a private carrier or bailee under special contract at the time the cargo was taken.

While it is pointed out that the loss under the insurance policy was fully paid to the consignor, it cannot be seriously contended here, nor did the lower court hold that this fact was material to the issues in this case. *Byalos v. Matheson*, 328 Ill. 269.

All persons who undertake for hire to carry the goods of another are either private or common carriers. Private carriers, like ordinary bailees for hire, are liable only for injury or loss of the goods intrusted to them when it results from failure on the part of themselves or their servants to exercise ordinary care. Common carriers are liable as insurers, for all injuries or loss not resulting from the act of God or the public enemy. *Hinchliffe v. Wenig Teaming Co.*, 274 Ill. 417, 422.

As bailees for hire, the defendants were not insurers of the safe delivery of the cargo given in to their care, but were obliged to exercise ordinary care and diligence and be free from negligence in safely carrying and making delivery of the goods intrusted to their care under the contract entered into by them. *Hinchliffe v. Wenig Teaming Co., supra; Langendorf Clothing Co. v. Fara,* 272 Ill. App. 160.

In the case of *Langendorf Clothing Co. v. Fara, supra,* this court held that "under the old common law rule, a bailee was not liable for theft, acts of God, or the public enemy, or where the goods were taken by violence. This rule, however, has been modified, but the bailee is still not liable for theft unless this occurred through his negligence."

The well settled rule as to the liability of a bailee for hire was aptly stated in an opinion by Mr. Justice Jones, reported in the case of *Beard v. Haskell Park Bldg. Corp.*, 248 Ill. App. 467, at page 473, wherein this court held that "It is well settled that a bailee for hire is not an insurer but owes the bailor a duty of ordinary care. As bailee, appellant was bound to exercise such

care and diligence as every prudent man takes of his own goods of like character. Ordinary diligence means that degree of care, attention, or exertion, which under the circumstances, a man of ordinary prudence and discretion would use in reference to the particular thing, were it his own property. . . . The bailor in all instances must prove that the bailee was negligent; but when he shows that the goods which he intrusted to the bailee's care were not delivered upon demand, he has made out a prima facie case or created a presumption of negligence which the bailee may overcome by offering evidence to show that he was not negligent. It is also the rule that where the failure to deliver is explained by the fact that the goods have been stolen, or destroyed by fire, and the bailee is no longer able to deliver them, the law will not presume negligence, and the onus or burden of proving the same is upon the bailor.''

The evidence clearly shows that the defendants were in the process of transporting the plaintiff's goods in the defendants' truck, when a car containing four armed men forced the defendant DeLong and his relief driver to get out of the truck and turn it over to them and took from the person of defendant DeLong $50 in money. Two armed men had gotten upon the running boards and forced the occupants to leave the truck and kneel with their faces down upon the rear seat cushion of a sedan, later forced one to go into an adjoining cornfield under armed guard while the other was forced to change a punctured tire, and subsequently, at the northwestern outskirts of Chicago, they were forced to leave the car. They thereupon walked to a farmhouse where they telephoned to the sheriff and the owner about the robbery, and the empty abandoned truck was found and recovered three days later. Can it be said under this uncontradicted state of facts that the defendant and his driver failed to exercise due care

502

for the safety of the cargo in question? The trial court held to the contrary, in which holding on the facts this court concurs.

The plaintiff made a prima facie case when he put in evidence the acceptance of the goods by the defendants in proper condition, and a failure by defendants to deliver the same. A prima facie case thus made created a presumption of negligence on the part of the bailee, which may be overcome by offering evidence to show that it was not negligent, and if it produces such evidence, the bailor, in order to make a case, must show that the bailee was, in fact, negligent, and that its negligence caused the loss or contributed thereto. *Miles v. International Hotel Co.*, 289 Ill. 320; *Beard v. Haskel Park Bldg. Corp., supra.*

Upon consideration of the whole of the record in this cause, we find no error that would justify a reversal of the judgment. Accordingly the judgment of the trial court is affirmed.

*Judgment affirmed.*