**BOWLES, Adm'r, OPA, v. WIETER.**

No. 1189.

District Court, E. D. Illinois.

March 25, 1946.

360

I. L. Kovitz, Regional Atty., OPA, of Chicago, Ill., and Noble L. Ferguson, Litigation Atty., OPA, of Springfield, Ill., for plaintiff.

Joseph Goldenhersh, of East St. Louis, Ill., for defendant.

WHAM, District Judge.

This is an action against Conrad J. Wieter, doing business as Wieter Truck Service, by the Administrator under section 205 (a), (c) and (e) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 925 (a), (c), (e), to recover alleged overcharges for intrastate trucking services and for an injunction to restrain future violations of the Act and regulations thereunder. Defendant defends on the ground that as a common carrier he is within the exemption provided in section 302 (c) of the Act, 50 U.S.C.A.Appendix, § 942(c), which by its language includes the right to control the prices charged for services generally but by a proviso specifically withholds authority to regulate "* * * (2) rates charged by any *common carrier* or other public utility." (Emphasis supplied.) Plaintiff concedes that defendant's interstate trucking service is that of a common carrier within the meaning of the exemption but insists that his intrastate trucking service is not that of a common carrier and, therefore, is not within the exemption.

As to his interstate business, defendant holds a Certificate of Public Convenience and Necessity issued by the Interstate Commerce Commission authorizing him as a "common carrier by motor vehicle" to transport in interstate and foreign commerce general commodities, with certain exceptions, over a regular route between Carlyle, Illinois, and St. Louis, Missouri, and to and from intermediate points and off-route points named in said certificate. It also authorizes him to *transport milk over irregular routes* (emphasis supplied) from Breese, Illinois, and points and places in Illinois within fifteen miles of Breese to St. Louis, Missouri.

As to his intrastate business, defendant holds a Certificate of Public Convenience and Necessity, issued upon his application, by the Department of Public Works and Buildings of the State of Illinois, classifying him as a "local carrier" under the provisions of the Illinois Truck Act. (Ill. Rev.Stat.1945, chap. 95½, secs. 240–282.) Said certificate states that it is issued in accordance with findings of fact by said Department of Public Works and Buildings, and sets out as findings of fact:

"That the said applicant or predecessor in interest of said applicant was operating as a Local Carrier on the effective date of the Illinois Truck Act, and continuously thereafter, until the date of filing the aforesaid application.

"That said applicant has filed with said application proof of compliance with the provisions of Sections 15, 16 and 17, and Section 18 as far as applicable, of The Illinois Truck Act, and the rules and regulations of the Department.

"That the base point of operation of said carrier as designated in said application is 314 So. 2nd Street, Breese, Illinois which point and location are found to be the base point of operation of said applicant.

"That the class or classes of property transported by said applicant, are as follows: Commodities—General.

"That the type of service rendered by applicant is * * * general local hauling.
    *      *      *      *      *      *

"*That the applicant is engaged in the business of transporting property by truck, for compensation, and for the general public.*" (Emphasis supplied.)

Said certificate specifies no route or routes over which defendant is to operate but provides that defendant is authorized to transport general commodities within the territory included within a radius of fifty miles from the base point of operation and, in addition, provides that applicant may transport property to or from any point outside said authorized area for a shipper or shippers within said area. Said certificate provides that the authority and rights granted defendant by it may be suspended, amended, or revoked by the Department of Public Works and Buildings for the reasons and in the manner stated in section 40 of the Illinois Truck Act, supra. Said section 40 provides for the revocation of the certificate upon application of the holder, or upon the Department's own initiative, or upon complaint, after a hearing, for wilful misrepresentation of any fact contained in the application, or for wilful failure to comply with any of the provisions of the Act or of any lawful orders, rules or regulations of the Department thereunder, or of the certificate. Said sections 15, 16, 17 and 18 of the Act mainly have to do with requirements for guarding public safety and securing the public against loss from damages suffered by reason of the operation of defendant's trucks.

The evidence shows that the defendant, operating under the name of Wieter Truck Service, is engaged in trucking business with office and base of operations at Breese, Illinois, has twelve trucks, seven or eight drivers, and employs a girl who attends to the bookkeeping and other office duties. Though defendant testified that he is engaged in general hauling, the business disclosed by the evidence was that of operating milk routes on which he picks up milk from farmers or milk producers and transports it for certain fixed charges of so much per hundred weight to dairies or creameries in Illinois and Missouri which purchase the milk from the farmers. He is not employed by the dairies. The purchase of the milk is solicited from the farmers by the dairies. The defendant then hauls the milk for the farmer to the dairy pursuant to directions given by the farmer and by special arrangement the dairy deducts from the farmer's check for the purchase price the amount necessary to pay defendant's hauling charges at his regular rate per hundred weight and this the dairy pays over to defendant.

With relation to defendant's intrastate business the evidence shows that he picks up milk from the farmers within a fifteen mile zone around Breese, Illinois, and transports it to a dairy at O'Fallon, Illinois, which is located approximately twenty miles west of Breese. He formerly operated a milk hauling route from the same zone to Carlyle, Illinois, but finding the customers too few and the income from that route inadequate he discontinued it. Thereafter, he picked up the milk of the farmers for whom he had hauled milk to Carlyle and hauled it, at his regular rates, to other dairies as directed by them.

It appears from the evidence that while the defendant's Certificate of Public Convenience and Necessity received from the State of Illinois specifies no route or routes over which he is to operate, he did, in fact,

and does now, operate over routes. Though it appears that defendant does not have regularly published schedules of rates covering his intrastate services as a carrier and it appears that the charges that he makes for his services are not regulated by any state agency, it also appears that he does, as a matter of fact, have regular rates, though unpublished, which he charges for his services to all alike. It also appears from the evidence that he accepts for all alike whatever milk is tendered to him for hauling on or over the routes which he operates; that he operates his intrastate business under the authority contained in the aforesaid Certificate of Public Convenience and Necessity as a local carrier without which certificate he would not be permitted to operate and that by the statute under which he holds his certificate his business is regulated in divers ways in the public interest.

In his endeavor to comply with the law in the operation of his business, defendant has kept employed as his adviser one H. A. Clark of East St. Louis, Illinois, who operates a rate and traffic service for carriers, has been admitted to practice before the Illinois State Commerce Commission and has practiced before that body for more than twenty-six years. Defendant relies upon and follows the advice given by Mr. Clark as his regularly employed traffic and rate expert.

As heretofore stated, defendant's intrastate transportation rates are fixed by himself and not by any governmental agency. Defendant, desiring to increase his intrastate rates, believing that he, as a common carrier, was required to comply with the provisions of Price Regulation 11 which relates to increases of rates for common carriers, and acting, as he believed, in compliance with the provisions of that regulation, notified the Office of Price Administration, Washington, D. C., of his intention to increase certain specified rates. On May 18, 1945, defendant received from the Office of Price Administration an acknowledgment of said notice. After waiting the thirty-day period required by Price Regulation 11, defendant on June 15, 1945, increased his rates in accordance with the notice.

This suit was filed against defendant on November 17, 1945, and charges, without discriminating between defendant's interstate and intrastate business, that since November 17, 1944, defendant has sold his services at prices in excess of maximum prices established by the General Maximum Price Regulation, as amended. Plaintiff, on the trial, claimed no authority under the Act for regulating defendant's interstate rates, but took the position that defendant's intrastate business is and has been that of a contract carrier and not that of a common carrier and that as to such business he is within the Act. Plaintiff asks for treble damages for alleged overcharges and for a preliminary and final injunction.

The question as to whether the defendant is a common carrier as to his intrastate business is a mixed question of law and fact dependent first upon the legal meaning of the term "common carrier" and, second, upon the nature of the business which he conducts and how he conducts it, as shown by the evidence. In Illinois the courts uniformly hold that a common carrier is one who undertakes for the public, for hire, to transport from place to place such persons or the goods of such as may choose to employ him. Illinois Cent. R. Co. v. Frankenberg et al., 54 Ill. 88, loc. cit. 95, 5 Am.Rep. 92; Parmelee v. Lowitz, 74 Ill. 116, 24 Am.Rep. 276; Beatrice Creamery Co. v. Fisher, 291 Ill. App. 495, 10 N.E.2d 220; Rathbun v. Ocean Accident & Guarantee Corp., 299 Ill. 562, 132 N.E. 754, 19 A.L.R. 140; McCusker v. Curtiss Wright Flying Service, Inc., 269 Ill.App. 502; Illinois Highway Transportation Co. v. Hantel, 323 Ill.App. 364, 55 N.E.2d 710. This also is the generally accepted definition of a common carrier throughout the several states. 1 Hutchinson on Carriers, § 47, et seq.; 13 C.J.S., Carriers, § 3, pages 25–31, and cases cited; Vol. 8, Words and Phrases, Perm.Ed., page 14 et. seq. and Cumulative Pocket Part. It was the view of the Supreme Court of Illinois in the case of Hinchliffe v. Wenig Teaming Co., 274 Ill. 417, 113 N.E. 707, that as a general rule truckmen who undertake to carry goods for hire for the public generally are common carriers and liable for any loss of goods carried not re-

sulting from the act of God or the public enemy.

In Pope's Legal Definitions, Vol. 2, p. 1236, private carrier is defined as one who, without being engaged in such business as a public employment, undertakes to deliver goods in a particular case, for hire or reward. See Rathbun v. Ocean Accident & Guarantee Corp., supra.

In the instant case the defendant has held himself out to the public as a carrier of goods for hire. Though his business be limited to the pick up of milk from farmers and the delivery of said milk to various dairies it is not essential that a common carrier of goods shall hold himself out to the public as engaged in the business of carrying all kinds of property. If he holds himself out to the public as engaged for hire in the business of carrying only a particular kind of property, he is a common carrier, nevertheless. Austin Fireproof Warehouse Transfer Co. v. Faltinson, Tex.Civ.App., 144 S.W.2d 905, 907; Pacific Spruce Corp. v. McCoy, D.C., 294 F. 711, affirmed McCoy v. Pacific Spruce Corp., 9 Cir., 1 F.2d 853. See Terminal Taxicab Co. v. Kutz, 241 U.S. 252, at page 255, 36 S.Ct. 583, at page 584, 60 L.Ed. 984, Ann.Cas.1916D, 765. Defendant was authorized by the State of Illinois to act as a local carrier, and a certificate authorizing such operation was issued to him, wherein the State of Illinois set forth as a finding of fact by it "that the applicant is engaged in the business of transporting property by truck, for compensation, and for the general public." As shown by the evidence, this finding has been justified by defendant's business practices at all times since he received said certificate.

The plaintiff's contention that defendant is a contract rather than a common carrier is based, in part, upon the facts: (1) That the dairymen instead of the defendant contacted the farmers and arranged for defendant to pick up and deliver the farmers' milk; (2) that defendant was paid by checks of the dairies, which checks were made up by deductions from the individual farmer's account. It appears from the evidence, however, that defendant hauled the milk not for the dairies but for the farmers and that they paid him for his service to them. It is true that the dairies made contracts for the milk with the farmers. But it is inferable from the evidence that the defendant transported the milk, not because the dairies contracted with the farmer for defendant to do so, but because he was the available public carrier who was in position and equipped to perform the service required, at regular times and at satisfactory rates. The farmers could and did direct him where to haul their milk, he hauled it as directed and was paid his regular charges by the farmers. Although the defendant received his transportation charges by checks from the dairies to which he delivered, this was by an arrangement for the convenience of all parties concerned, as shown by the evidence, and is without other significance.

Plaintiff also contends that defendant's discontinuance of the milk route to Carlyle is proof that he is not a common carrier. Defendant was not required to have a definite route or routes within the State of Illinois under the provisions of the Illinois Truck Act, Ill.Rev.Stat. chap. 95½, sec. 247. The only specific requirement was that he not extend his operations beyond a designated zone with Breese as the center. His routes, therefore, were those which he himself had established voluntarily. Having established a route, he was under no legal compulsion to continue it indefinitely. It was within his power to change his routes within the permissible zone. After he discontinued his run to Carlyle, he was under no obligation to pick up and deliver milk to Carlyle, even though tendered, and his refusal to do so did not militate against his status as a common carrier or make him a "contract carrier" under the Illinois Truck Act. Common carriers of goods are not required to undertake to carry by any or all means but only by those means and methods and over the route to which their business is confined. 1 Hutchinson on Carriers, § 60; Pitlock v. Wells, Fargo & Co., 109 Mass. 452; Pittsburgh, etc., R. Co. v. Morton, 61 Ind. 539, 28 Am.Rep. 682; 13 C.J.S., Carriers, § 3, page 27. Defendant obviously felt under obligation to furnish to these farmers such service as he had to

offer for he continued to pick up and to deliver their milk on his other routes either to O'Fallon, Illinois, or St. Louis, Missouri, as the farmer would direct, at his regular rates for that service.

The defendant is classified as a "local carrier" by the Department of Public Works and Buildings of the State of Illinois under the provisions of the Illinois Truck Act. It is notable that the term "local carrier" as used and defined in that Act is fairly synonymous with the term "common carrier" as used in the Interstate Commerce Act. The Illinois Truck Act, Ill.Rev.Stat. chap. 95½, sec. 241 (sec. 2 (j)), defines "local carrier" as follows: " 'Local Carrier' means any person not included under subdivision (i) of this section who or which undertakes, whether directly or by a lease or any other arrangement, to transport property, or any class or classes of property, by truck and for compensation, for the general public in intrastate commerce."

The Interstate Commerce Act, 49 U.S. C.A. § 303(a) (14) provides: "The term 'common carrier by motor vehicle' means any person which holds itself out to the general public to engage in the transportation by motor vehicle in interstate or foreign commerce of passengers or property or any class or classes thereof for compensation, whether over regular or irregular routes, * * *."

The Illinois Truck Act by its language makes substantially the same distinction between a local carrier and a contract carrier as is made by the Interstate Commerce Act between a common carrier and a contract carrier. The Illinois Truck Act (sec. 2 (m)) defines contract carrier as follows: " 'Contract Carrier' means any person who or which undertakes, whether directly, or by a lease or any other arrangement to transport property, or any class or classes thereof, by truck, in intrastate commerce for compensation, for a particular person or persons under individual contracts and agreements of a bilateral and continuing nature * * *."

The Interstate Commerce Act, 49 U.S. C.A. § 303(a) (15) provides: "The term 'contract carrier by motor vehicle' means any person which, under individual contracts or agreements, engages in the transportation * * * by motor vehicle of passengers or property in interstate or foreign commerce for compensation."

From a comparison of the Illinois Truck Act with the Interstate Commerce Act and particularly from a comparison of the definitions above quoted as contained in said Acts it seems obvious that a "local carrier" under the Illinois Truck Act is a "common carrier" within the meaning of the Interstate Commerce Act, as well as within the meaning of the common law. From the evidence in this case it appears that the defendant is and has conducted his business as a "local carrier" and that he is a "common carrier."

The Illinois Truck Act regulates defendant as a "local carrier" which, in view of the content of the statute, is equivalent to being regulated as a common carrier. He is obliged to hold himself out to the public generally, limited, of course, as are all common carriers to that portion of the public desirous of using the service he offers. He is compelled to have a franchise in the form of a certificate declaring that public convenience and necessity require such operation. As the holder of such certificate he is obliged to comply with statutory and regulatory exactions in the interest of the public safety and welfare. His business is obviously affected with a public interest.

While it is true that the rates charged by the defendant for his services as a common law carrier are not regulated by any governmental body, that fact does not, by any accepted definition of the term "common carrier", cast doubt upon defendant's classification as such. Ballentine's Law Dictionary defines "common carrier" as follows: "One who undertakes, for hire or reward, to transport the goods of such as choose to employ him, from place to place. He undertakes to carry for all people indifferently, and hence is regarded in some respects as a public servant."

Under no definition that has been called to my attention is the regulation of rates by a governmental agency made a prerequisite of the status. The right of the government to regulate the rates charged by a carrier of goods grows out of the

preexisting fact that he is a "common carrier." While the State of Illinois undoubtedly has the lawful right to regulate the defendant's rates it has not seen fit to do so.

Being a common carrier, the defendant is within the exact language of the exemption in section 302(c) of the Emergency Price Control Act of 1942. No limitation was imposed in the Act upon the ordinarily accepted meaning of the term "common carrier" as used in said exemption and no limitation seems to be implied by any language in the Act. Common carriers have always been recognized as being monopolistic and affected with a public interest, and, therefore, subject to such reasonable regulations as governments see fit to impose. At the time of the enactment of the Emergency Price Control Act of 1942 it was within the knowledge of Congress that there existed in the many states common carriers of goods and passengers whose rates had not been subjected to regulation by any governmental authority. Had Congress wished to restrict the class of common carriers falling within said exemption to such as had their rates controlled and regulated by a governmental agency, it would undoubtedly have done so by adding to the exemption clause the phrase "whose rates are fixed by some governmental agency." The Congress not having seen fit to do this, it would seem to be improper for this court to do so in this case.

I have not disregarded the case of Davies Warehouse Co. v. Bowles, 321 U.S. 144, 64 S.Ct. 474, 88 L.Ed. 635, in which the Supreme Court gave weight to the fact that the rates charged by the public utility there involved were fixed by the state. But in that case the defendant which claimed exemption as a public utility was a public warehouse which affords a type of service that does not fall within the historic category of public utility. It was for that reason, as clearly appears both from the majority opinion and from the dissenting opinion, that it became necessary to buttress the defendant's position with every available supporting fact, including the fact that its charges were regulated, in order to remove doubts as to its being a public utility within the intended scope of the exemption. No such historic doubt applies to the defendant here who is a common carrier and as such has from time immemorial been held to be clothed with a public interest and subject to regulation.

Being of the opinion that from the evidence and the law the defendant must be held to be and is a common carrier within the exemption of section 302(c) of the Emergency Price Control Act of 1942, the defendant is entitled to a judgment herein.