George Meyer, Trading as Bentley Importers and as Parkington's, Appellee, v. Phillip Rozran, Trading as Cannonball Messenger and Truck Service, Appellant.

Gen. No. 44,259.

302

Opinion filed February 4, 1948. Rehearing denied February 20, 1948. Released for publication February 20, 1948.

ROBERT BRANAND, JR., of Chicago, for appellant.

SEAGO, PIPIN, BRADLEY & VETTER, of Chicago, for appellee; CHARLES O. BUTLER, of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

George Meyer, doing business as ''Bentley Importers,'' and as ''Parkington's,'' filed a statement of claim in the municipal court of Chicago against Phillip Rozran, doing business as Cannonball Messenger & Truck Service, alleging that he delivered to the defendant, a common carrier, a large assortment of wines and liquors for delivery to various of his customers; that defendant failed to deliver all of the merchandise; and that plaintiff thereby suffered damages of $2,799.50, for which he asked judgment. Defendant, answering, stated that on September 27, 1946, plaintiff turned over to him for delivery approximately 125 cases of assorted liquors; that on that day and the following day he delivered all but 50 cases; that September 28 was a Jewish holiday; that many of the consignees were not available to accept delivery; that the undelivered merchandise was returned to defendant's warehouse at about 5:00 p. m. on September 28; that it was there placed in a locked vault to be held until delivery could be accomplished on Monday, September 30; that defendant retained the services of the Pinkerton Detective Agency; that its watchmen, during the time the warehouse was closed, made periodical checks; that notwithstanding, burglars effected a forcible entry and stole a large quantity of merchandise, including 44 cases of liquors owned by plaintiff; that defendant has a certificate issued by the Department of Public Works and Buildings of Illinois, in accordance with the provisions of the Illinois Truck Act, ch. 95½, Ill. Rev. Stat. 1945, pars. 240 to 282 [Jones Ill. Stats. Ann. 112.130–112.172], wherein defendant is designated as a ''contract carrier''; that as such ''contract carrier'' his liability is that of a bailee for hire; that he is not a common carrier; that defendant does not carry for the public generally, but only for such persons and such commodities and at such rates as he, in his discretion, sees fit; that the

carriage of liquors is extra hazardous; that when defendant was hired by plaintiff the latter informed defendant that he, plaintiff, would assume all risks excepting for such loss or damage as might be directly attributed to the personal negligence of defendant or his employees; that defendant thereupon agreed to carry plaintiff's merchandise on such terms; that plaintiff agreed to a condition on the receipt issued by defendant that defendant "will not pay over $25.00 per shipment, regardless of the number of packages on that shipment, in case of loss or damage, unless a greater value is declared and charges for such greater value paid"; that no greater value was declared by plaintiff; and that if defendant is liable at all for the 21 shipments alleged to have been lost, he is liable only for $25 per shipment, or a total of $525. A trial before the court without a jury resulted in a finding and judgment against defendant in the amount of $2,623.91. Defendant, appealing, asks that the judgment be reversed.

Defendant and his wife are engaged in the delivery business, with their offices, terminal and warehouse at 412 North Wells street, Chicago. They own four trucks. They also hire men who own their own trucks. Altogether they operate about 16 trucks. They have a card in the classified telephone directory under the name "Cannonball Bonded Special Delivery Service." They also describe themselves as "Cannonball Bonded Delivery Service" and "Cannonball Bonded Messenger Service." They do not accept business from "everybody," but only from those with whom they care to do business. There are many with whom they do not care to do business. Their rates are not uniform. The charges are based on the type of service required. In most shipments the merchandise is delivered direct from the place where it is picked up. Plaintiff's merchandise had to be brought to the warehouse and sorted because deliveries were scattered all over the city. In

all cases delivery is made as soon as possible regardless of the commodity.

On Thursday, September 26, 1946, at about 10:00 a. m., defendant went to the bonded warehouse of Wakem & McLaughlin and picked up a load in excess of 200 cases of liquors to be delivered for plaintiff, which was the largest shipment directed to be made by plaintiff. It took about four hours to get the shipment out of the warehouse. It was then taken to defendant's warehouse to be sorted for delivery. About 100 cases destined for the South Water Market were left on the truck and delivered that afternoon. When the remainder of the shipment had been booked and routed it was almost 3:30 p. m., and only a few deliveries could be made that afternoon. The following day was Friday. Again the merchandise was sent out, but the deliveries could not be completed. On Saturday another attempt was made, but most places were closed and only two deliveries could be made in the course of four or five hours on that morning. The goods that could not be delivered, consisting of about 50 cases, were then placed in a vault in defendant's warehouse and locked up. The warehouse was closed at 5:15 p. m. on Saturday and reopened at 8:00 a. m. on Monday. Between the closing on Saturday evening and opening on Monday morning the warehouse was burglarized and the liquor stolen. The value of the liquor lost as a result of the burglary was $2,623.91. Plaintiff contends and the court found that defendant is a common carrier. The court also found that the defendant does a business of carrying general merchandise for "virtually all comers"; that defendant failed "to absolve himself" of negligence "in delay in delivery"; and that the limitation of liability to $25 per, shipment is not binding on plaintiff.

In his answer defendant also asserts that he has a certificate issued by the Department of Public Works and Buildings of this State designating him as a "con-

tract carrier" under the provisions of ch. 95½, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 85.001 *et seq.*]. When the trial was drawing to a close the attorney for defendant stated that his client had "called Springfield" that afternoon; that "they have just mailed that certificate"; that it was "pretty late"; and he proposed that they wait for the certificate, when he would offer it in evidence subject to plaintiff's objection. The certificate was not offered in evidence.

A common carrier is an insurer of goods entrusted to him and accountable for the loss thereof or any damage thereto unless shown to have happened by the act of God or the public enemy or to have been occasioned by an act of the shipper or someone in his position. But the burden of proving exoneration is always upon the carrier. *Chicago & N. W. R. Co. v. Sawyer*, 69 Ill. 285; *Western Transp. Co. v. Newhall*, 24 Ill. 466; *Illinois Cent. R. Co. v. McClellan*, 54 Ill. 58; *Mahaffey v. Wisconsin Cent. R. Co.*, 147 Ill. App. 43. Defendant maintains that this doctrine is not applicable to the instant case as he is not a common carrier. Plaintiff replies that whether defendant is a common carrier is a question of fact on which the court found for the plaintiff, that the evidence supports the finding and that the finding and judgment should not be disturbed. A common carrier of goods is one who, as a regular business, transports personal property from place to place for those who may employ him and pay his charges. What constitutes a common carrier is a question of law, but whether one charged as such is within the definition is a question of fact. The authorities recognize two classes of carriers, namely, private carriers and common carriers. To constitute a carrier a common carrier, he must hold himself out as engaged in public service for all persons indifferently, so that he will be liable for refusal, without excuse, to carry for all who might apply. A private carrier is one who undertakes by special agreement in a particular instance to transport property without being bound to

serve every person who may apply. 13 C. J. S. Carriers, secs. 2 and 4. *Rathbun v. Ocean Accident & Guaranty Corp. Ltd.,* 299 Ill. 562; *Beatrice Creamery Co. v. Fisher,* 291 Ill. App. 495.

A private carrier is not an insurer of the goods entrusted to him for transportation. As a general rule a private carrier is under the duty of exercising at least ordinary care and diligence to prevent damage to the goods entrusted to him for transportation and is liable where damage results from his negligence or failure to use that care. *Hinchliffe v. Wenig Teaming Co.,* 274 Ill. 417; *Beatrice Creamery Co. v. Fisher,* 291 Ill. App. 495. Defendant does not serve all of the public who apply for his services. He selects his customers and the commodities that he carries. He does not maintain uniform rates. There are no public rates or schedules, no regular trips, and no fixed termini or freight depots. Plaintiff called defendant and asked him if he would handle his (plaintiff's) liquor. They discussed tentative rates. Although he was averse to handling liquors on account of the risk involved, defendant agreed to deliver liquors for plaintiff. In his opinion the trial judge stated that defendant held himself out as a common carrier by his advertising. In our opinion the advertising matter and other exhibits do not show that defendant held himself out as a common carrier. A private carrier is privileged to advertise and secure all the business he can. Taking all of the testimony and inferences favorable to plaintiff's contention that defendant is a common carrier, we find, as a matter of law, that he is not a common carrier.

The trial court also held that there was a delay in delivery; that the delay was contrary to the custom and usage in carrying the merchandise; and that there was a burden on defendant to absolve himself of negligence for the failure to deliver within a reasonable time. Plaintiff maintains that defendant was guilty of negligence in delaying delivery; that

such finding is amply supported by the evidence; that the custom of making delivery the same day was proved; and that the finding of the court on this proposition should not be disturbed. Defendant insists that he exercised due care and that there was no unreasonable delay in delivery. It is not contended that defendant was negligent in storing the merchandise in the vault in its warehouse on Saturday evening, there to be kept until delivery could be made on Monday. The parties stipulated that there was a burglary and that plaintiff's merchandise was stolen as a result of the burglary. Plaintiff's claim rests on the contention that defendant did not exercise due care in that he unreasonably delayed the delivery of the liquors. Defendant being a bailee for hire, the burden was on him to show that he exercised due care and that he was not guilty of negligence. We are satisfied that the defendant made this showing. The contract specified no time for delivery. The evidence shows that defendant made an honest effort to deliver the goods. It was unprofitable for defendant to load and unload the trucks each day when delivery could not be made. The trial judge said that the testimony as to the attempted delivery was general and vague. No objection was made to it at the time it was offered. The uncontradicted evidence establishes that defendant was diligent in his effort to deliver the merchandise. There was no basis for the contrary finding, nor was there a basis for the finding that there was a custom to deliver liquor the day it is received by the carrier regardless of circumstances.

For the reasons stated the judgment of the municipal court of Chicago is reversed and the cause is remanded with directions to enter judgment for the defendant and against the plaintiff.

*Judgment reversed and cause remanded with directions.*

Lewe, P. J., and Kiley, J., concur.