(No. 13828.—Reversed and remanded.)
MABEL RATHBUN, Defendant in Error, *vs.* THE OCEAN ACCIDENT AND GUARANTEE CORPORATION, Ltd. Plaintiff in Error.

*Opinion filed October 22, 1921—Rehearing denied Dec. 7, 1921.*

1. CARRIERS—*who are private carriers.* Private carriers are those who undertake to deliver goods or passengers in a particular case for hire, without being engaged in such business as a public employment.

2. SAME—*the difference between private and common carriers.* Private and common carriers differ both in respect to the duty which rests upon the latter to undertake the charge of transportation and which does not rest upon the former in the absence of a special agreement, and in respect of the risk which renders the common carrier practically an insurer while the private carrier is liable only as an ordinary bailee.

3. SAME—*what is necessary to constitute one a common carrier.* To constitute one a common carrier it is necessary that he hold himself out as such by advertising or by actually engaging in the business and pursuing the occupation as an employment.

4. SAME—*proprietors of bus lines are common carriers.* Jitneybus proprietors and owners of stage coaches, hacks and omnibuses are common carriers, in that they serve all the public alike who apply to them for carriage so long as they have room, and they are held common carriers regardless of the fact that they operate in cities or from city to city or that their passengers may designate the route and the place to which they wish to be carried.

5. SAME—*when proprietor of garage who lets out automobile for hire is not a common carrier.* A proprietor of a garage who lets out an automobile for hire and furnishes a driver on the special call of a physician for a trip into the country is not a common carrier in such service regardless of whether said proprietor is licensed to run taxicabs within the city where the garage is located.

6. INSURANCE—*when plaintiff must prove that death by accident occurred while deceased was riding with common carrier.* In a suit against an accident insurance company for a double indemnity, which the policy provided for in case the insured was killed by accident while riding with a common carrier, the burden is on the plaintiff to prove that the person in whose automobile the insured was riding at the time he was killed was acting as a common carrier in the particular service rendered.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. AUGUSTUS A. PARTLOW, Judge, presiding.

H. M. STEELY, H. M. STEELY, JR., and WILKERSON, CASSELS, POTTER & GILBERT, for plaintiff in error.

ACTON & ACTON, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Mabel Rathbun, defendant in error, filed a declaration in assumpsit against the Ocean Accident and Guarantee Corporation, Limited, to recover for the death of her husband, Dr. James Corbett Rathbun, in the circuit court of Vermilion county. The amount of the insurance for death by accident, under three different provisions, is $6000. The policy provides for payment of double that amount if the injuries causing death are incurred by the insured while traveling in or on a public conveyance (including the platform, steps or running-board thereof,) or in a public carriage provided by a common carrier for passenger service. Plaintiff in error, the insurer, admitted liability for single indemnity, including interest, in the sum of $6175. The court gave judgment for double indemnity, including interest, in the sum of $12,350. On appeal to the Appellate Court for the Third District the judgment of the trial court was affirmed. The case comes here on petition for *certiorari*.

The deceased was accidentally killed November 12, 1918, in a collision of the automobile in which he was riding and

an interurban car at a road crossing about three miles west of Danville, Illinois. On the afternoon of that date he was called to go to Missionfield, a hamlet six miles west of Danville, to see a patient. He telephoned to Rayle Bros., a co-partnership composed of James, Alfred and Asa Rayle, to send an automobile and driver to his office. Asa Rayle responded to this call with one of his firm's automobiles, and Dr. Rathbun drove the car from Danville to the scene of the accident with Asa Rayle seated beside him. There was another man in the car by the name of Zilko, who lived in Missionfield. It does not appear clearly from this record whether Zilko was a caller on Dr. Rathbun for medical services or was being taken home at the doctor's request. He had no connection with the garage company. All three occupants of the car were killed.

The sign in front of the garage read, "Rayle Bros., Garage and Storage.—Telephone 5252." The firm's letter and bill-heads read, "Rayle Bros., Auto Livery, Storage and Washing." In the telephone directory of the city of Danville Rayle Bros. had this advertisement: "Rayle Bros. Taxi, Telephone 1964.—Always at your service.—Taxicabs for all occasions." They had applied to the city clerk of Danville and had received a license to run a taxicab line in the city. One of the brothers testified, in substance, that they had no taxicab and did not authorize the word "taxi" in their advertisements. The evidence in the record is that they owned only six cars in their garage and connected with their business and that each of the brothers had a private car, all of which were used at funerals or in emergencies when more cars were needed, and that half of their business was furnishing cars for funerals. They had in their employ five or six drivers, who drove in turns, except where the call was for a particular driver. They had no cab stands in the city and made no regular trips to depots or hotels. Their employees were instructed to solicit no business outside and to pick up no passengers at depots, hotels or else-

where outside their place of business. Their business came
through the office at their place of business, by persons com-
ing there or calling by telephone. They made no calls for
less than fifty cents and charged seventy-five cents from a
hotel to a depot. Besides their business in the city they also
hired their automobiles to persons to make trips into the
country and to neighboring towns, and the charge on such
occasions varied with the weather and the condition of the
roads. They made such trips for all who were suitable
persons and when the weather was not bad or stormy.
When a car was hired for such service into the country,
the person hiring it controlled and directed where it should
go, the route to be taken and how many should go with
him. If the caller took others with him it cost no more,
as the car on such occasion was hired for an agreed sum
per hour or an agreed sum for the trip. Dr. Rathbun
owned and drove a car on some of his trips to the coun-
try and occasionally hired a car at Rayle Bros.' garage for
such trips. He usually called for a car at the garage by
telephone when he desired it and a driver from the garage
usually accompanied it. Sometimes he would only make
one visit to a patient with a car and sometimes he would
make a half dozen such visits, in which case Rayle Bros.
would charge him an agreed sum per hour or an agreed
sum for the trip, if it was for a particular distance. He
had the privilege of taking anyone else with him that he
desired or of stopping on the road and taking in other per-
sons to ride with him, at no extra cost. He had full con-
trol of the car on such occasions and directed where it
should go and where it should stop. He had thus patron-
ized Rayle Bros. during a period of about five years.

The main question in this case is whether or not plain-
tiff in error's liability is a single liability of $6000 and in-
terest or a double liability of $12,000 and interest. This
question is to be determined solely upon the single propo-
sition whether or not Rayle Bros. were common carriers in

the service they were rendering Dr. Rathbun at the time that he was accidentally killed. This question does not necessarily depend on the fact whether or not Rayle Bros. were common carriers in the city of Danville in carrying persons from hotels to trains, or from trains to hotels, or from place to place within the city limits. We have stated the substance of all of the evidence bearing upon the question with reference to the service rendered Dr. Rathbun by Rayle Bros. While it is not stated in so many words, the clear inference in the record is that the service rendered by Rayle Bros. to Dr. Rathbun was by special contract, and that the service differed in no material way from the character of service ordinarily rendered by liverymen in letting teams and carriages to their patrons for trips into the country or from town to town.

Private carriers as ordinarily defined are those who, without being engaged in such business as a public employment, undertake to deliver goods or passengers in a particular case for hire or reward. (2 Pope's Legal Definitions, 1236, citing *Pennewill* v. *Cullen,* 5 Harr. 242; 10 Corpus Juris, 38.) Hutchinson, in his work on carriers, (2d ed. sec. 35,) defines private carriers for hire as such as make no public profession that they will carry for all who apply, but who occasionally, or upon a particular occasion, undertake for compensation to carry upon such terms as may be agreed upon. A common carrier differs from a private carrier in two important respects: (1) In respect of duty, it being obliged by law to undertake the charge of transportation, which none but a common carrier, without a special agreement, is; and (2) in respect of risk, the former being regarded by the law as an insurer, the latter being liable like ordinary bailees. (10 Corpus Juris, 37.) Hence a common carrier of passengers has been defined as "one who undertakes for hire to carry all persons indifferently who may apply for passage, so long as there is room and there is no legal excuse for refusal." The holding by

all of the authorities is, that to constitute one a common carrier it is necessary that he hold himself out as such by advertising or by actually engaging in the business and pursuing the occupation as an employment.

Jitney-bus proprietors and owners of stage coaches, hacks and omnibuses have generally been held to be common carriers. This is so because in their business they serve all the public alike who apply to them for carriage so long as they have room, and they are held common carriers regardless of the fact whether they operate in cities or from town to town or from city to city, so long as they maintain their status as public carriers, carrying all who apply and refusing none unless they have no room or for some other legal reason may refuse. It does not make any particular difference as to their being common carriers that their passengers may designate the way and the place to which the passengers may be carried, but after the carriages are entered by the passengers such carriers must necessarily have control and regulation of the passengers' conduct and of the operation of the carriages before they can be held to the extraordinary liability of common carriers to such passengers. Livery-stable keepers lack one of the essential qualifications,—a readiness to carry any and all persons who apply and offer to pay the charges of carriage and comply with the regulations. (*Parmelee* v. *Lowitz*, 74 Ill. 116; *Stanley* v. *Steele*, 2 Ann. Cas. (Conn.) 342.) As to the services performed by Rayle Bros. for Dr. Rathbun, as already suggested, we are unable to see that such services amounted to more than the ordinary services performed by livery-stable keepers. The fact that Rayle Bros. were licensed in Danville to run taxicabs, if such be the case, can have nothing to do in determining the question whether or not they were common carriers in rendering the services in question. The license conferred no privileges beyond the city limits of Danville. The advertisement in the telephone directory for similar reasons has no direct bearing on the

question.  There is no evidence that Rayle Bros. were running a jitney or taxicab line from Danville to Missionfield or from Danville to any other town.  When Dr. Rathbun hired the car it was for a special service to him and he had control of both the car and the driver.  It certainly could not be successfully contended that Rayle Bros. owed him the extraordinary duty of a common carrier, or that they were liable to him, as such, for any injury that he might sustain on such trip.  The automobile was not a passenger car in the sense in which we are now using that term.  It was, in fact, a car contracted for by Dr. Rathbun by a private contract for his use in his profession and under his control.

The Supreme Court of Arkansas in *Forbes* v. *Reinman*, 112 Ark. 417, held under facts similar to those in the case at bar that the owner of an automobile hired, with its driver, from the defendant was not a common carrier, and that the defendant was not liable to the plaintiff, an occupant of the automobile, as a common carrier, but was only liable as a liveryman or private carrier for ordinary negligence.

In *Oppenheimer* v. *Maryland Casualty Co.* 70 Pa. 382, suit was brought upon an insurance policy containing a double indemnity provision in the same language as the policy in the case before us.  The holding of the court was that there could be no recovery of double indemnity.  The facts showed that one Lee owned and operated a garage in the city of Wilkesbarre.  He owned several automobiles of various types, which he customarily hired to the public for such times and rates as were agreed on.  Four men hired an automobile from him to take them to the city of Scranton and return.  By the agreement the owner of the garage undertook to transport the party to Scranton and return them there in the evening for a bulk price.  On the return trip, while crossing a railroad, the automobile was struck by an engine of a railroad company and the plaintiff was injured.  The court, in reaching its conclusion that

defendant was not a common carrier, said: "The owner of the car was a private individual. His cars were his to do with as he pleased. His cars operated along no route, had no point of starting or destination except the will of the patrons who hired them. He had no schedule of tariffs or rates for their use. He could charge more on a wet day than on a dry one, and as much more as his bailee was willing to pay. He could exact more compensation for driving into a country where the roads were bad than elsewhere. In a word, the rate he was to receive was the subject matter of contract between him and his prospective patron."

The same question was involved in the case of *Georgia Life Ins. Co.* v. *Easter*, 189 Ala. 472, and the same holding was made. The chief difference in the facts is, that the vehicle hired was a wagon accompanied by a driver, who carried the party to a picnic, and on the way to the picnic one of the party employing the wagon and driver was accidentally killed.

In *Traveler's Ins. Co.* v. *Austin*, 116 Ga. 264, it appears that the paymaster of a railroad company was injured while traveling on the company's business in a railroad coach arranged and adapted specially for the discharge of his duties as paymaster. The question in that case was the same as in this case: whether or not the insurance company was liable for double indemnity if the accidental injuries should be "sustained while riding as a passenger and being actually in or upon any railway passenger car." The court held that the insured was not a passenger and the car in which he was riding was not a passenger car. The same doctrine of double indemnity was involved in the case of *Bogart* v. *Standard Life and Accident Co.* 187 Fed. 851, and the court made the same holding. In this latter case a postal clerk sought to recover on an insurance policy which insured against accidental injuries "while riding as a passenger, being in or on any railway passenger car

propelled by mechanical power provided by a common carrier for passenger service."

In *Terminal Taxicab Co.* v. *Kutz,* 241 U. S. 252, the question for consideration was whether the taxicab company operating vehicles in Washington, D. C., was a common carrier, so as to be required to submit information to the Public Utilities Commission of the District of Columbia, under the Public Utilities law, concerning the rates which it charged patrons. The evidence showed that about one-third of the business of the taxicab company consisted in the operation of a taxicab and transfer business between the Union station and various points in the city. Another part of its business was under contract with hotels, by which it agreed to furnish taxicabs and automobiles within certain hours to meet the requirements of the hotels, with exclusive right to solicit business in and about the hotels. The remainder of its business was the furnishing of automobiles from its central garage on orders. The court held that it was a common carrier as to the two first named branches of its business but was only a private carrier as to the remainder of its business.

It was incumbent upon the defendant in error in this case to prove that Rayle Bros. were common carriers in the service they performed for Dr. Rathbun. The evidence fails to prove that material allegation, and the circuit court and Appellate Court erred in holding that the plaintiff in error was liable for double indemnity. Defendant in error's proof establishes that she is entitled to recover the single indemnity of $6000 and interest.

The judgments of the Appellate and circuit courts are reversed and the cause is remanded to the circuit court for further proceedings.        *Reversed and remanded.*