## CHENERY v. EMPLOYERS' LIABILITY ASSUR. CORPORATION, Limited.

(Circuit Court of Appeals, Ninth Circuit. April 6, 1925.)

No. 4449.

**1. Carriers ⬳4—One may be engaged in one line of business as common carrier and in another line of business as private carrier.**

The same person or corporation may be engaged in one line of business as a common carrier, and in another line of business as a private carrier.

**2. Insurance ⬳452—Operators of bus line held private and not "common carrier," within accident policy.**

Operators of bus line between two cities, who by special arrangement transported passenger in small automobile to city, where he was transferred to bus for transportation to other city, *held* still a private and not a common carrier as to such passenger within accident policy covering transportation by "common carrier."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Common Carrier.]

**3. Evidence ⬳472(1) — Carrier's testimony that he could refuse to carry passengers inadmissible, in action involving issue as to whether he was private or common carrier.**

In action involving issue, as to whether operator of bus line was private or common carrier, within accident policy, operator could not testify that he could refuse to carry passengers, since such testimony would have been a mere conclusion on the main issue.

**4. Insurance ⬳668(11)—Whether carrier was private carrier or common carrier, within accident policy, held question for court, and not question of fact for jury.**

In action on accident policy, involving issue as to whether carrier by which injured person was being transported was a common carrier within the policy, the question whether the carrier was a private or a common carrier under the facts *held* a question for the court, and not a question of fact for the jury.

In Error to the District Court of the United States for the Southern Division of the Northern District of California; George M. Bourquin, Judge.

Action by Leonard Chenery, as administrator with the will annexed of the estate of Edith P. Chenery, deceased, against the Employers' Liability Assurance Corporation. Judgment for defendant, and plaintiff brings error. Affirmed.

Wallace & Ames, of San Francisco, Cal., for plaintiff in error.

Redman & Alexander, of San Francisco, Cal., for defendant in error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. This was an action by an administrator with the will annexed on a policy of insurance providing indemnity for the loss of life or injuries resulting through accidental means. At the close of the testimony on the part of the plaintiff, the court below directed a verdict in favor of the defendant; hence the present writ of error.

The sole question for our consideration is this: Did the intestate meet her death while a passenger in or on a public conveyance provided by a common carrier for passenger service? There was no controversy over the facts. For about five years prior to the date in question Roberts & Ward operated a motor bus line between the towns of Clevedon and Papakura, in New Zealand, for the transportation of passengers and light parcels for hire. The distance between the two points is about 8 miles and the busses made three trips daily, leaving Clevedon at 7 a. m., 8:30 a. m., and 3:30 p. m. The regular passenger fare was three shillings, single; six shillings, return. In addition to operating the bus line between the points in question, Roberts & Ward transported passengers to and from points beyond Clevedon by special arrangement. By special arrangement we mean simply a request for the transportation by telephone or otherwise and the payment of the compensation agreed upon. During the month of June, 1923, the intestate was visiting a sister at Sandspit, about nine miles east of Clevedon. On the afternoon of June 16, the intestate and three companions, desiring to take the train at Papakura that evening, made arrangements with Roberts & Ward, by telephone, to meet them at some point on the road between Sandspit and Clevedon and transport them to Papakura. Pursuant to this arrangement the four parties in question proceeded in a farm cart from Sandspit until they met Ward at Whakatiri, about six miles west of Sandspit. At that point they transferred from the farm cart to a Ford car driven by Ward and proceeded on to Clevedon. At Clevedon they transferred from the Ford car to a Dodge motor bus and proceeded on toward Papakura, but before reaching their destination the motor bus overturned and the intestate was killed. There were no passengers in the Ford car or in the motor bus, except the intestate and her three companions, and no baggage except that belonging to the intestate and her companions. No

parcels were transported except one loaf of bread and one newspaper; but where these were taken up, or where they were to be delivered, the record does not disclose.

[1-4] It is well settled by the authorities that the same person or corporation may be engaged in one line of business as a common carrier and in another line of business as a private carrier. Santa Fé Railway v. Grant Bros., 228 U. S. 177, 33 S. Ct. 474, 57 L. Ed. 787; Terminal Taxicab Co. v. Dist. of Col., 241 U. S. 252, 36 S. Ct. 583, 60 L. Ed. 984, Ann. Cas. 1916D, 765; Rathbun v. Ocean Accident & Guarantee Corporation, 299 Ill. 562, 132 N. E. 754, 19 A. L. R. 140; Forbes v. Reinman & Wolfort, 112 Ark. 417, 166 S. W. 563, 51 L. R. A. (N. S.) 1164; Georgia Life Ins. Co. v. Easter, 189 Ala. 472, 66 So. 514, L. R. A. 1915C, 456. Roberts & Ward were no doubt common carriers of passengers on their regular run between Papakura and Clevedon. It seems equally clear that they were mere private carriers when they undertook to carry passengers beyond their regular run by special arrangement or agreement. Had the carriers, in this case, transported the intestate and her companions under the special contract or agreement from Sandspit or Whakatiri to Papakura, without passing over any part of the main road from Clevedon to Papakura, it would seem clear that they were private carriers only; and if the intestate met her death while in the Ford car before reaching Clevedon, the same conclusion would follow. We do not think that the fact that a part of the trip was made over the main road from Clevedon to Papakura, or the fact that the passengers were transferred from the Ford car to the motor bus at Clevedon, changes the rule. The reason for the transfer is not disclosed by the record, but it does appear that the transfer at Clevedon was not made to one of the regular busses engaged in the common carrier service. In any event, the transportation was an entire one under an entire contract, and the carriers acted in the same capacity throughout. In our opinion, that capacity was a private one.

It is claimed by the plaintiff in error that the carrier did not testify that he could refuse to carry passengers beyond the main line under the private contract or arrangement. True, the witness did not so testify, nor would he have been permitted to do so. His answer would be a mere conclusion. If a common carrier, he had no right to refuse; but, if only a private carrier, he had that right. To permit him to answer the question would be to permit him to decide the main issue in the case, and that was the function of the court and jury. Nor can we agree with counsel for plaintiff in error that there was a question of fact for the consideration of the jury, for, under the admitted facts in the case, the carriers were either common carriers or private carriers, and it was the plain duty of the court to direct a verdict for either one or the other of the parties. The direction of a verdict in the favor of the defendant was, in our opinion, free from error.

This distinction between a common carrier and a private carrier may seem somewhat refined and technical, but the intestate was not insured unless she met her death while a passenger in or on a public conveyance provided by a common carrier for passenger service.

The judgment is affirmed.