El Juez Asociado Señor De Jesús no intervino.

En el Asunto de la White Star Bus Line, Inc., contra varios porteadores públicos con vehículos de motor con capacidad autorizada no mayor de siete pasajeros. Jaime Ortiz, Alejandro Salgado y Juan González y otros, porteadores públicos con licencia del Departamento del Interior.

Núm. 7770.—*Sometido:* Julio 11, 1938. *Resuelto:* Julio 26, 1938.

616

*Juan Valldejuli Rodríguez,* abogado de los apelantes; *C. Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados de la White Star Bus Line, Inc.

El Juez Asociado Señor Wolf emitió la opinión del tribunal.

Se trata de la vista adelantada del recurso de apelación interpuesto por Jaime Ortiz, Alejandro Salgado, Juan González y otros, contra una decisión de la Corte de Distrito de San Juan sosteniendo la validez de cierta orden de la Comisión de Servicio Público. La apelada o interventora White Star Bus Line, Inc., radicó una moción para que se desestimara el recurso por frívolo. Declaramos sin lugar la moción para desestimar en una opinión que ha de ser considerada en conexión con el fallo que ahora estamos dictando. En ella dijimos:

"... Estas consideraciones resolverían la apelación, que entonces podría considerarse como frívola si no fuera por el hecho de que los apelantes sugieren otra duda.

"Esa duda es ésta, que el artículo 38 de la Carta Orgánica, supra, parece ser aplicable exclusivamente a porteadores públicos. De toda esta parte de la Carta Orgánica se hace evidente que el Congreso tuvo en mente compañías o probablemente personas que actuaran como tales porteadores públicos. Desde luego, los redactores de la Carta Orgánica de 1917 puede que no pensaran en los pequeños automóviles con asientos para un número limitado de pasajeros. No obstante, la tendencia general de la Carta Orgánica, a nuestro juicio, se limita a corporaciones de servicio público.

"Entonces surge la cuestión de si la Asamblea Legislativa de Puerto Rico podía, mediante una pretendida definición, convertir a los apelantes en compañías de servicio público, si de acuerdo con las bien conocidas prácticas y costumbres de vehículos de motor que se dedican al transporte de pasajeros, ellos no eran tales."

■■ Teníamos la duda de si en Puerto Rico los llamados "velloneros", que frecuentemente eran en su origen automóviles privados, son o podían ser considerados porteadores públicos. Nominalmente, bajo una teoría especial quizá, se llamaban a sí mismos porteadores públicos y en varios escritos, radicados en relación con éste caso, ellos mismos se llaman así.

Si los vehículos objeto de este litigio han de ser considerados como "jitneys" (guaguas en Puerto Rico), entonces existe un cúmulo ilimitado de autoridades en los Estados Unidos que demuestran que son porteadores públicos a saber:

*Nolen* v. *Reichman,* 225 F. 812, 42 A.L.R. 854; *Rathbun* v. *Ocean Accident & Guarantee Corp.,* 299 Ill. 562, 132 N. E. 754; "Pond on Public Utilities", tomo 3, sec. 807 *et seq.* Véase también *Goldsworthy* v. *Maloy et al., Public Service Commission,* 141 Md. 674, 119 A. 693, y otros casos citados en el alegato de la White Star Bus Line, Inc.

Citamos de la obra "Pond on Public Utilities", pág. 1527, párr. 761:

"'Jitneys' como porteadores públicos.—El advenimiento del 'jitney' creó una condición enteramente nueva de transporte local e hizo surgir muchas cuestiones nuevas y problemas de control local. Este medio de transporte constituye una forma enteramente nueva y distinta del porteador público y puede así clasificársele para fines de reglamentación. Los 'jitneys', ora funcionen dentro de una sola municipalidad o entre varias municipalidades, usan las calles y carreteras de manera extraordinaria, y su explotación, por ser un privilegio y no un derecho, está sujeta a ser reglamentada y controlada por el estado directamente o por el municipio bajo la autoridad del estado. Su explotación por las calles y caminos como porteadores públicos, por lucro, es un uso especial que tiende a obstruir el tránsito, y este uso, con el consiguiente desgaste en las vías públicas, es

un objeto adecuado de reglamentación. La entrada del 'jitney' en el campo de la transportación requirió una reglamentación especial, y en el ínterin muchas ciudades han aprobado ordenanzas con tal objeto y su derecho a así hacerlo ha sido sostenido uniformemente. Además de lo razonable de las disposiciones de tales ordenanzas, el derecho a clasificar los 'jitneys' y a reglamentarlos como una clase especial, está reconocido en todas las jurisdicciones.''

Lo siguiente también es afín y demuestra el origen del nombre:

''Algunos años ha el predominio de pequeños automóviles baratos dió ocasión a una costumbre, que se generalizó por el país como un fuego de pradera, seguida por los dueños de estos artefactos al ofrecer por una tarifa baja transportar al público cortas distancias dentro de nuestras apiñadas ciudades. Los mecánicos y pequeños hombres de negocio al ir y regresar de sus faenas, ganaban de este modo lo suficiente para cubrir los gastos del funcionamiento de sus vehículos, a medida que el público ansiosamente se aprovechaba de la oportunidad de correr más cómoda y rápidamente que en los tranvías urbanos. A esos vehículos se les dió el nombre de 'jitneys', puesto que ése era el mote local que en el Oeste se daba a la monedita que de ordinario se cobraba por el transporte. Hubo una época en que el movimiento amenazó con arruinar todos los tranvías del país y por este motivo y con el objeto de proteger al público en otras formas, para reglamentar estos vehículos se adoptaron muy pronto medidas drásticas, que fueron seriamente atacadas, y en su consecuencia ha surgido un número considerable de precedentes en relación con ellas.'' (Babbitt, The Law App. to Motor Vehicles, pág. 124, párr. 188.)

Por tanto, a este respecto queda por decidirse si estos ''velloneros'' pueden ser considerados como ''jitneys''. No tenemos a la mano el mismo número de autoridades para demostrar que un automóvil, explotado en la forma en que lo son estos velloneros, debe ser considerado como un ''jitney'', mas creemos que tal es el entendido universal en los Estados Unidos, conforme indican las autoridades aquí citadas. Por ejemplo, el señor Pond continúa diciendo en el párrafo 762:

"El motivo para que se haga una distinción entre un sistema de tranvías urbanos, que discurren sobre rieles permanentes de acero, bajo una franquicia especial, y que exige que se haga una inversión considerable de manera permanente, y un carro de turismo Ford, explotado como un 'jitney bus', es por de más obvio..."

Estos velloneros, a excepción de que son de menor tamaño, funcionan exactamente en la misma forma que los ómnibus (guaguas) y que otros porteadores públicos reconocidos. Un carro de turismo Ford, que toma pasajeros indistintamente en cualquier punto, es un ómnibus pequeño. El que de ordinario no pueda llamársele así no altera su situación legal como porteador público.

Un porteador público de pasajeros puede definirse como uno que se dedica, como negocio mediante paga o remuneración, a transportar a toda persona, o prácticamente a todo aquél que lo solicita. 10 Corpus Juris 606 *et seq.*, 643 *et seq.* Como cuestión de derecho y como consecuencia de la posición asumida por ellos no tenemos dudas de que los apelantes son porteadores públicos.

Los "jitneys" que usan las vías públicas para el transporte prácticamente de todo pasajero que lo solicita, son tales porteadores públicos.

En 1850 se aprobó en el estado de Pensilvania una ley concebida en los siguientes términos:

".... 'Que los consejos selectos y comunes de la ciudad de Filadelfia tendrán autoridad, mediante ordenanza u ordenanzas, para reglamentar debidamente los ómnibus, o los vehículos que participen de la naturaleza de los mismos, y con tal fin será legal para dichos consejos, etc., prescribir lo relativo a la expedición de licencias a aquellas personas que las soliciten y que deseen poseer y utilizar ómnibus o vehículos de la naturaleza de los mismos, así como para imponer una suma razonable anualmente o en cualquier otra forma...."

(*Frankford etc. R'y Co.* v. *Philadelphia*, 98 Am. Dec. 242, 246.)

La Corte Suprema de Pensilvania dijo: ·

". . . Esta ley aún está en vigor. Claramente autoriza una reglamentación mediante el uso de licencias. Y somos del criterio que ella es aplicable a trenes utilizados para el transporte de pasajeros. Ellos son ómnibus o, de no serlo, son vehículos de la naturaleza de ómnibus. Todo el mundo tiene acceso a ellos, y ésa ha sido la intención." *Frankford etc. R'y. Co.* v. *Philadelphia, supra.*

Así, pues, se desprende que los precursores de los carros ferroviarios fueron los ómnibus, que eran reconocidos indisputablemente como porteadores públicos.

La necesidad de reglamentar los vehículos que utilizan las vías públicas es casi de por sí aparente, y hacemos la siguiente cita:

"Un 'jitney' ha sido definido como 'un vehículo movido por fuerza propia, excepción hecha de un tranvía urbano, que cruza las vías públicas entre puntos definidos o terminales, y como un porteador público que transporta pasajeros a razón de 5 centavos o menos, entre dichos terminales o puntos intermedios, y tenido, considerado y anunciado como tal.' Y en algunas disposiciones para reglamentar los 'jitneys', han sido clasificados y definidos como porteadores públicos de pasajeros. Además, en algunas jurisdicciones, los preceptos que reglamentan el uso de 'jitneys' expresamente definen un 'jitney' como un porteador público de pasajeros. Ha sido clasificado como una entidad de servicio público. (Public utility.) Un ómnibus de motor o un 'jitney' es claramente un porteador público de pasajeros dentro del significado de esa frase, conforme la misma ha sido antes definida. La mayoría de los estados han otorgado a las comisiones de servicio público ciertas facultades sobre el funcionamiento de 'jitneys' incluyendo la de exigir una licencia especial o certificado de necesidad o conveniencia pública." (Huddy's Cyclopedia of Automobile Law, novena edición, tomo 1–2, págs. 299, 300, sec. 116.)

▮ Los apelantes, tanto en la vista original como en la apelación final, hicieron hincapié en el hecho de que estos "velloneros" ya habían obtenido licencias públicas del Pueblo de Puerto Rico y habían pagado $30 por cada una. Esta

licencia es una de carácter muy general y naturalmente permitiría a los "velloneros" hacer cuanto quisieran, dentro de lo razonable, de no ser restringidos por la Comisión de Servicio Público, conforme ha ocurrido en este caso. El posible campo de explotación de estos "velloneros" no es anulado sino posiblemente limitado y, según insiste la interventora, algunos o todos ellos podrían funcionar como guaguas, de obtener permiso de la Comisión de Servicio Público.

En su consecuencia, el caso de *Smith* v. *Cahoon*, 283 U. S. 553, citado en nuestra opinión de julio 5, 1938, con referencia a porteadores públicos, no es de aplicación.

En la vista pública celebrada ante este tribunal, los apelantes se quejaron amargamente de que no se les dió oportunidad de ser oídos ante la Comisión de Servicio Público. Cuán públicas son las sesiones de la Comisión de Servicio Público no lo sabemos, mas creemos que existe una posibilidad razonable de que los apelantes u otros similares a ellos, hubieran tenido una oportunidad, de haberla deseado. Sea ello como fuere, la Comisión de Servicio Público es para la mayoría de los fines, incluyendo el presente, un cuerpo administrativo o participa de una índole cuasi legislativa, similar a la de las asambleas municipales y los comités de la Asamblea Legislativa. En este caso específico, la naturaleza de estos "velloneros" era enteramente conocida para todos y en cuanto a los hechos la Comisión de Servicio Público no necesitaba que se le ilustrara. Existe la posibilidad de que la actitud de la Comisión pudiera haber cambiado con la argumentación de los letrados, pero tal oportunidad ha sido ahora ampliamente concedida con las vistas celebradas en la corte inferior y ante este tribunal.

Tenemos también ante nos una moción solicitando que expliquemos el alcance de nuestra resolución en lo relativo a la fianza a ser prestada por los apelantes. Ahora no hay necesidad de una fianza ulterior.

*Debe confirmarse la decisión apelada.*