WHITE STAR BUS LINE, INC., sustituída por el *Receiver* J. W. RIVIERE, demandante y apelada, *v.* GLENS FALLS INDEMNITY CO., JAIME ORTIZ, JUAN GONZÁLEZ, ALEJANDRO SALGADO y LA COMISIÓN DE SERVICIO PÚBLICO DE PUERTO RICO, demandados y apelantes.

Núm. 8446.—*Sometido:* Junio 24, 1942. *Resuelto:* Julio 30, 1942.

*José López Baralt,* abogado de la apelante Glens Falls Indemnity Co.; *Dubón & Ochoteco,* abogados de los apelantes Ortiz y Salgado; *C. Iriarte, F. Fernández Cuyar* y *G. González Blanes,* abogados

de la apelada White Star Bus Line, Inc.; *Fiddler, McConnel & González*, abogados del síndico (*receiver*) de la apelada.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Hace alrededor de quince años la Comisión de Servicio Público de Puerto Rico concedió a la demandante apelada una franquicia exclusiva para transportar pasajeros entre las ciudades de San Juan y Río Piedras por ciertas rutas fijadas por dicha Comisión. En vista de que un buen número de automóviles públicos sin autoridad legal infringían la franquicia de la apelada transportando pasajeros por asiento por las rutas mencionadas, la Comisión de Servicio Público de Puerto Rico, con fecha 4 de enero de 1938 tuvo a bien aprobar una orden final que en lo pertinente dice así:

"Se ordena, además, y por la presente queda prohibido, a todo vehículo de motor que no hubiere sido previamente autorizado por esta Comisión, que actúe, sirva, funcione u opere como porteador público en el transporte de pasajeros por asiento, brindando, ofreciendo, prestando o rindiendo su servicio al público en general, entre los municipios de San Juan y Río Piedras o dentro de los municipios de San Juan y Río Piedras o entre puntos intermedios. El hecho de que un vehículo de motor actúe como porteador público transportando pasajeros por asiento de un sitio a otro entre los municipios de San Juan y Río Piedras o dentro de los municipios de San Juan y Río Piedras, o entre puntos intermedios, constituirá prueba prima facie de una violación de las disposiciones de esta orden."

Sintiéndose agraviados por la referida orden, los aquí demandados Jaime Ortiz, Juan González y Alejandro Salgado, a fin de revisarla, el 21 de enero de 1938 recurrieron ante la corte inferior, la que previo los trámites legales el 16 de mayo siguiente desestimó el recurso. Cuatro días después apelaron para ante este tribunal, confirmándose la sentencia apelada el 26 de julio de 1938 (53 D.P.R. 615).

No conforme dichos tres demandados, el 30 de enero de 1939, por sus abogados Dexter & Dexter, radicaron un escrito de apelación para ante la Corte de Circuito de los Es-

tados Unidos para el Primer Circuito. No limitaron su apelación a ellos exclusivamente, sino que contrario a lo que habían hecho al recurrir a la corte inferior y al apelar ante este tribunal, el nuevo escrito de apelación se hizo no sólo a nombre de dichos tres demandados, si que también a nombre de todos los propietarios y conductores de vehículos dedicados a servicio público. Esta inclusión de los demás dueños y conductores de vehículos dedicados a servicio público no se limitó al escrito de apelación. En el *affidavit* sobre la cuantía en controversia, suscrito por el demandado Juan González, se expresó también que él y los otros dos apelantes, Alejandro Salgado y Jaime Ortiz, comparecían por su propio derecho y además por el de todos los propietarios y conductores de vehículos de servicio público en igual situación que ellos y afectados del mismo modo por la sentencia de este tribunal y por la orden de la Comisión de Servicio Público de Puerto Rico. Se dijo además que el número de las otras personas en igual situación que ellos ascendía a trescientos más o menos y que los tres demandados y los demás apelantes estaban siendo privados cada uno de ellos de una entrada de $5 diarios al prohibírseles operar sus vehículos por las indicadas rutas, exponiéndose además que en adición a dicha pérdida cada uno de los tres demandados y de los trescientos restantes estaban siendo privados del uso, valor e inversión de los automóviles poseídos o manejados por ellos, valor e inversión que en cada caso representaba un promedio de $1,000 o un total en exceso de $5,000.

Fué a base de ese escrito de apelación y de esa declaración jurada sobre la cuantía en controversia que el 8 de febrero de 1939 el Juez Sr. Bingham, de la Corte de Circuito, dictó la siguiente orden:

"Se ordena que los apelantes radiquen en la Corte Suprema de Puerto Rico una fianza para costas en apelación por la cantidad de $250 y una fianza *supersedeas* por la suma de $3,000 con fiadores aprobados por la Corte Suprema de Puerto Rico."

En armonía con lo expuesto por los tres demandados apelantes en su escrito de apelación y declaración jurada sobre cuantía en controversia, la compañía Glens Falls Indemnity Co., que prestó la fianza de supersedeas, en el indicado documento de fianza consignó lo siguiente:

"POR CUANTO en una sesión de la Corte de Circuito de Apelaciones de los Estados Unidos para el Primer Circuito se concedió apelación en el caso arriba expresado a dicho Jaime Ortiz, Alejandro Salgado y Juan González y *otros,* contra la sentencia dictada en el caso arriba expresado contra ellos. . . .

"" *        *        *        *  ,      *        *        *

"POR TANTO la condición de la obligación arriba expresada es que si dichos Jaime Ortiz, Alejandro Salgado y Juan González *y otros* prosiguen su apelación. . ." (Bastardillas nuestras.)

Después de aprobada la fianza, la policía siguió denunciando a los dueños y conductores de vehículos públicos (con excepción de los tres demandados apelantes) que continuaban violando la orden de la Comisión y esto dió motivo a que los abogados de los demandados, Sres. Dexter & Dexter, dirigieran una comunicación al Jefe de la Policía Insular, Sr. Orbeta, protestando de que la policía estaba arrestando conductores y vehículos públicos por supuestas violaciones a la orden de la Comisión de Servicio Público de Puerto Rico de 4 de enero de 1938, y luego de referirse a la orden y fianza de supersedeas, decían:

"Como esta acción de la Policía debe ser el resultado de una mala inteligencia o desconocimiento de la orden de *supersedeas* y suspensión de dicha orden de Servicio Público por la Corte de Circuito de Apelaciones de los Estados Unidos e infringe (la acción de la Policía) la orden de *supersedeas* a nombre de los apelantes antes nombrados *y de todos los otros conductores y dueños de vehículos públicos que indirectamente son partes en esta apelación, nosotros, como abogados de ellos,* respetuosamente llamamos su atención a esta acción de la Policía a fin de que usted pueda corregirla y de este modo evitar ulterior complicación y conflicto con la autoridad de la Corte de Circuito de Apelaciones de los Estados Unidos." (Paréntesis y bastardillas nuestros.) (Traducido del inglés.)

De conformidad con la referida comunicación el Jefe de la Policía dió las órdenes pertinentes para que no se denun.ciase a los dueños o conductores de vehículos que violasen la ameritada orden. En vista de los graves perjuicios que la orden del Jefe de la Policía irrogaba a la apelada, ésta recurrió ante la Corte de Circuito y el propio Juez Sr. Bingham el 29 de marzo de 1939 tuvo a bien limitar los efectos de la orden de supersedeas en la siguiente forma:

"Vista la moción radicada por la apelada White Star Bus Line, Inc. para dejar sin efecto la orden y fianza de *supersedeas,* y vistas las objeciones a la misma radicadas por los apelantes, se ordena que la orden de *supersedeas* decretada en este caso el 8 de febrero de 1939 se aplique y limite exclusivamente en sus efectos a los tres apelantes originales ante la corte de distrito, a saber, Jaime Ortiz, Alejandro Salgado y Juan González como conductores de cualesquiera vehículos poseídos por ellos en febrero 8, 1939, . . .

"Se ordena además que dicha orden de *supersedeas* no paralizará o suspenderá la orden de la Comisión de Servicio Público de Puerto Rico fechada enero 4 de 1938, en cuanto a ninguna otra persona." (Ex. B, demandado, T. de E., pág. 279.) (Traducido del inglés.)

El primero de abril de 1939 los apelantes, por los mismos abogados, presentaron una extensa moción a la Corte de Circuito de Apelaciones interesando que la citada orden del Juez Sr. Bingham, de 29 de marzo de 1939, fuese revisada por la corte *in bank,* de suerte que la misma se modificase y ampliase, haciéndola extensiva a todos los propietarios y conductores de vehículos públicos que constituyen la misma clase a que pertenecen los tres apelantes, "todos los cuales desean proveer facilidades de transportación barata y adecuada entre la ciudad de San Juan y Río Piedras." (Ex. 10, dte., T. de E., pág. 264.)

La Corte de Circuito no accedió a lo solicitado por los apelantes, quedando firme la prohibición en cuanto a los demás dueños de vehículos de servicio público.

Posteriormente la Corte de Circuito de Apelaciones desestimó la apelación y con tal motivo la apelada White Star

Bus Line, Inc. instituyó esta acción en la corte inferior contra Glens Falls Indemnity Co., como fiadora, y Jaime Ortiz, Juan González y Alejandro Salgado, como principales, y contra la Comisión de Servicio Público de Puerto Rico, porque siendo ésta parte necesaria, rehusó asociarse a la demandante. Reclamó esta última la cantidad de $15,400 por los perjuicios que alega haber sufrido durante el tiempo en que la orden final de la Comisión estuvo en suspenso para todos los dueños o conductores de vehículos públicos, es decir, desde el 15 de marzo de 1939 en que el Jefe de la Policía Insular ordenó a la policía que no denunciase por infracción a la orden final, hasta el 29 del mismo mes, en que fué limitado el alcance de la orden de supersedeas. Visto el caso en sus méritos, se dictó la sentencia apelada, condenando a los demandados, con exclusión de la Comisión de Servicio Público, a pagar solidariamente a la demandante la cantidad de $8,572.90 por concepto de daños y perjuicios, limitando la responsabilidad de la fiadora al importe de la fianza—$3,000—, y condenando a dichos demandados a pagar la cantidad de $200 por concepto de honorarios de abogado y las costas.

Fué contra dicha sentencia que los tres demandados y la compañía fiadora establecieron este recurso. Dos son las cuestiones fundamentales a resolver: (1) ¿Responden los demandados apelantes de los daños causados a la demandante por los trescientos otros dueños o conductores de vehículos de servicio público, al violar la orden de la Comisión durante los catorce días antes mencionados? (2) ¿Erró la corte inferior al calcular el montante de los daños?

Contrario a lo que aparece de la evidencia documental a que nos hemos referido, sostienen ahora los apelantes que la orden final nunca fué suspendida y rechazan toda responsabilidad por los actos ilegales de los trescientos otros dueños y conductores de vehículos públicos, de cuyos supuestos derechos tan solícitamente se ocuparon en el escrito de

apelación, en la moción sobre cuantía en controversia, en la comunicación al Jefe de la Policía Insular, en su oposición a que se modificase la orden de supersedeas, y finalmente en su solicitud para que la orden enmendada dictada por el Juez Sr. Bingham fuese revisada por el tribunal in bank.

La relación de causa y efecto entre los actos de los aquí apelantes y el daño causado por ellos a través de los trescientos otros dueños y conductores es tan manifiesta que no comprendemos cómo pueda sostenerse seriamente que dichos actos no constituyen la causa próxima de los daños causados. Tampoco puede la compañía fiadora evadir su responsabilidad por tales daños hasta el montante de la fianza. En dicho documento se consignó no en una, sino en dos ocasiones, que la fianza garantizaba el resarcimiento de los daños causados por "Jaime Ortiz, Alejandro Salgado y Juan González y otros". ¿Cómo es posible aceptar, como pretende la compañía fiadora, que la frase "and others" después de los nombres de los apelantes, nada signifique, especialmente cuando en el escrito de apelación y en la declaración jurada sobre la cuantía en controversia—documentos éstos de fecha anterior a la fianza—de manera expresa y terminante se dice que la apelación se establece a nombre y en beneficio, no sólo de los tres demandados mencionados, si que también de trescientas personas que se hallan en iguales condiciones que ellos? Esto no lo ignoraba la compañía fiadora. Ningún fiador suscribe una fianza sin antes cerciorarse de la obligación que va a garantizar, y si contrario a como debió haber actuado, la compañía no examinó los documentos pertinentes, asumió entonces un riesgo de que ella y sólo ella debe responder.

Sostiene la compañía fiadora que admitiendo como admite la validez y exigibilidad de la fianza, ésta sólo puede extenderse a las tres personas relacionadas por sus nombres en la misma y a nadie más, y que las palabras "and others" no tienen ni pueden tener efecto legal alguno por la sencilla ra-

zón de que la apelación en este pleito, en sus distintas etapas, fué siempre interpuesta como cuestión de derecho por dichos tres demandados. Es verdad que la apelación ante la corte inferior y ante este tribunal fueron interpuestas por dichos tres demandados solamente, pero no es menos cierto que en la que se instó para ante la Corte de Circuito, los tres demandados, constándoles su falsedad, manifestaron que la apelación se interponía a su nombre y en el de los trescientos demandados, induciendo así a la corte a creer que se trataba de un pleito de clase, y a base de esas falsas manifestaciones aquel tribunal decretó el supersedeas previa fianza que prestó la compañía apelante, obligándose ésta, en armonía con el escrito de apelación y con la declaración jurada antes mencionada, por los tres demandados *"and others"*. ¿Quienes son estos otros si no los trescientos individuos que componen la clase supuestamente perjudicada por la orden de la Comisión? El hecho de que esos individuos no tuviesen derecho a apelar por no haber sido partes en el pleito en los tribunales insulares, no releva de responsabilidad a la fiadora, que, siguiendo el escrito de apelación, los incluyó en su fianza; pero independientemente de su responsabilidad directa por esos trescientos individuos, la fiadora es siempre responsable porque no puede perderse de vista que la actuación ilegal de dichas personas fué inducida e instigada por las actuaciones de los tres demandados dentro de este pleito. Es cierto que la orden original de supersedeas no menciona expresamente a los trescientos dueños y conductores, ni tenía para qué mencionarlos. De acuerdo con el escrito de apelación para ante la Corte de Circuito, dichas personas constituían una clase, eran apelantes y a ellas se refirió dicha orden al disponer: "Se ordena *que los apelantes* radiquen en la Corte Suprema de Puerto Rico una fianza, etc." Los propósitos de la orden de supersedeas quedaban cumplidos ordenando la suspensión de la ejecución de la sentencia mientras se tramitaba la apelación, y así se hizo. Fué después,

cuando empezó a realizarse el daño que la Corte de Circuito, enterada de la falsa manifestación de los apelantes, aclaró su orden y limitó sus efectos en la forma que conocemos. El caso de *Avilés* v. *Hijos de Rafael Toro, S. en C., et al.,* 27 D.P.R. 671, invocado por la apelante, no favorece su contención. En lo pertinente al caso que nos ocupa, aquél resolvió que todo lo que esté incluído en la fianza judicial, que la ley no exige, debe considerarse eliminado, y todo lo que en ella no se exprese, que debió haberse consignado en la misma, debe tenerse como incluído en ella. La fianza de supersedeas, de acuerdo con la ley, responde de los daños que se causen al demandado con motivo de la suspensión de la sentencia, y esos daños se obligó a resarcirlos la compañía, no sólo a nombre de los tres individuos, si que de la supuesta clase. Es obvio que estos últimos no tenían derecho a apelar; pero la realidad es que apelaron, que la corte los tuvo por apelantes, que la compañía los cubrió en su fianza y que se causaron daños a la apelada. Independientemente del derecho de ellos a apelar, la fiadora responde del daño causado.

■ Pasemos ahora a la segunda cuestión planteada, es decir, a la cuantía de los daños. A este efecto prescribe el artículo 1059 del Código Civil, ed. 1930, que la indemnización de daños y perjuicios comprende no sólo el valor de la pérdida que haya sufrido, sino también el de la ganancia que haya dejado de obtener el acreedor. Para probar la apelada la ganancia que dejó de obtener, demostró que durante los catorce días que precedieron al período de igual extensión durante el cual la orden final estuvo totalmente suspendida, transportó un promedio de 79,238 pasajeros diarios, mientras que durante el período de suspensión sólo transportó 66,991, siendo los gastos idénticos en uno y otro período, puesto que trabajaba en ambos el mismo número de guaguas. La apelada dejó de transportar, de acuerdo con esa prueba, 12,247 pasajeros diarios durante catorce días, y siendo 5 centavos el precio del pasaje, la ganancia dejada de obtener por la

demandada ascendió a $8,572.90. El número de pasajeros transportado durante los catorce días inmediatamente posteriores al período de suspensión fué mayor que el de este último período y algo menor que el que precedió a la orden de suspensión. Sostienen los apelantes que a los efectos de calcular los daños debió tomarse en cuenta esta cifra, o sea la representativa del período posterior a la suspensión; pero como muy acertadamente alega la representación de la apelada, dicho período no debe tomarse en consideración porque sin duda estaba afectado por la situación anormal creada con motivo de la suspensión total de la orden final.

■ Arguyen los apelantes que los daños en este caso concedidos por el tribunal *a quo* son inciertos y especulativos. No debe confundirse la existencia de los daños propiamente dichos con la forma de determinar su cuantía. Las acciones por daños personales existen desde los primeros tiempos de la Ley Común y la acción por muerte ilegal existió por primera vez en Inglaterra desde que se aprobó el célebre estatuto de Lord Campbell en 1846. Nadie ha sostenido con éxito hasta ahora que los daños reclamados en acciones de esa naturaleza sean inciertos o especulativos. Sin embargo, ¿existe quien pueda determinar con absoluta certeza la indemnización que deba pagarse por la pérdida de una vida o de un miembro importante del cuerpo humano? Lo esencial es que la existencia del daño no sea incierta o especulativa. Probado que el daño existe y que su casa próxima fué la acción u omisión del demandado, no puede decirse que el mismo sea incierto o especulativo, no importando que la determinación de su cuantía sea aproximada, siempre que el cálculo descanse en una base razonable y no sea hijo del capricho o adivinación. *Story Parchment Co.* v. *Paterson Parchment Paper Co.* (1931) 282 U. S. 585, 75 L. ed. 544; *Palmer* v. *Connecticut Ry. Co.,* 311 U. S. 544 (1940); y *Eastman Kodak Co.* v. *Southern Photo Materials Co.* (1927) 273 U. S. 359, 71 L. ed. 684, donde se dijo que aquél cuya conducta ilegal ha

862

hecho difícil la determinación exacta de los daños sufridos por el demandante no tiene derecho a quejarse de que tales daños no puedan ser calculados con la misma precisión y exactitud que de otro modo lo hubieran sido. Y en *Story Parchment Co.* v. *Paterson Parchment Paper Co.*, supra, se cita con aprobación de *Gilbert* v. *Kennedy*, 22 Mich. 117:

"Cualquier incertidumbre que pudiera haber en esta manera de calcular los daños, es una incertidumbre causada por el mismo acto ilegal del demandado y la justicia y el orden público requieren de consuno que sea él quien sufra el riesgo de la incertidumbre así causada."

Que se causaron daños a la apelada y que su causa próxima fué la actuación de los demandados, es cuestión fuera de duda, a nuestro juicio, como tampoco admite dudas la justicia y razonabilidad del método adoptado para la determinación de su cuantía, método que está sostenido por el Tribunal Supremo de los Estados Unidos en *Palmer* v. *Connecticut Ry. Co.*, supra.

*Procede, por lo expuesto, confirmar la sentencia apelada.*

El Juez Asociado Sr. Travieso no intervino.