MARIO MERCADO E HIJOS, apelante, *v.* COMISIÓN DE SERVICIO PÚBLICO, apelada; JESÚS STELLA RODRÍGUEZ, hoy su Sucesión, interventores y apelados.

Núm. 10516.—*Sometido:* Abril 1, 1952. *Resuelto:* Junio 27, 1952.

*R. Rivera Zayas, G. Rivera Cestero, Milton F. Rúa* y *Pedro M. Porrata,* abogados de la apelante; *Leopoldo Tormes García,* abogado de los interventores, apelados.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Allá para el 2 de abril de 1941 Jesús Stella Rodríguez y su esposa Consuelo Marcucci acudieron ante la Comisión de Servicio Público con una petición en que alegaron ser dueños de cinco fincas rústicas con un área total combinada

de 42.28 cuerdas; que las mismas lindan entre sí, forman un solo cuerpo, están dedicadas al cultivo de cañas de azúcar y no tienen ninguna concesión de agua para regadío; que por la Utilización de las Fuentes Fluviales[1] se han venido practicando aforos en la parte arriba de las tomas de agua de la Sociedad Mario Mercado e Hijos y dada la cantidad de agua que discurre normalmente por el río Guayanilla podría accederse a su solicitud sin perjudicar a ninguna otra persona; y que las únicas concesiones que existen en dicho río y que quedan aguas arriba del sitio donde ellos interesan establecer la toma son una autorización para tomar 183½ litros de agua por segundo para regar 600 cuerdas de terreno, más o menos, de las fincas conocidas con los nombres de Faro, San Colombano y Rufina, pertenecientes a la Sociedad Civil Agrícola Mario Mercado e Hijos, y otra autorización para tomar 40 litros de agua por segundo para regar 30 cuerdas de terreno de una finca radicada en el barrio Jagua Alta del término municipal de Guayanilla, con cabida de 150 cuerdas, que fué anteriormente de las Rodríguez y en la actualidad pertenece a la referida sociedad. Solicitan que previo los trámites de ley la Comisión dicte resolución autorizándoles a tomar 13 litros por segundo de las aguas que discurren por dicho río para regar las referidas 42.28 cuerdas.

La Sociedad Mario Mercado e Hijos se personó en autos, negó los hechos esenciales de la petición y adujo como defensas especiales: que desde el año 1847 hasta el presente ha venido disfrutando de las aguas del río Guayanilla; que desde tiempo inmemorial, es decir desde antes del 1850, sus antecesores y ella han estado en el uso y posesión de todas las aguas del aludido río para el regadío de más de 1500 cuerdas; que la Comisión carece de jurisdicción para conocer de la anterior petición, toda vez que el peticionario no ha cumplido con los requisitos establecidos por la ley y los reglamentos de la Co-

---

[1] En la actualidad el verdadero nombre de ese organismo es Autoridad de las Fuentes Fluviales de Puerto Rico. Ley 83 de 2 de mayo de 1941 (pág. 685).

misión y además porque estando ella en el uso y disfrute de las aguas de ese río desde tiempo inmemorial la Comisión de Servicio Público no puede hacer concesión alguna sobre las mismas.

Trabada así la contienda, la Comisión de Servicio Público celebró prolongadas vistas, durante las cuales tanto los peticionarios como la opositora ofrecieron copiosa prueba testifical y documental. Luego de ello, la Comisión dictó resolución declarando con lugar la petición bajo los términos y condiciones que hizo constar en la franquicia por ella otorgada. La sociedad opositora apeló de conformidad con lo provisto por el artículo 78 de la Ley 70 de 6 de diciembre de 1917 (Vol. II, págs. 433, 527). El Tribunal de Distrito de Puerto Rico, sección de San Juan, después de oír a las partes, dictó sentencia en 26 de marzo de 1951[2] confirmando la resolución de la Comisión de Servicio Público. Una vez más apeló Mario Mercado e Hijos. En apoyo de su recurso alega ahora ante nos que el tribunal inferior erró: (1) al resolver que la Comisión, al conceder la franquicia, no tomó en consideración y decidió la cuestión de competencia exclusivamente judicial, de haber la apelante ganado por título de prescripción el aprovechamiento de las aguas disponibles del río Guayanilla, por haberlas disfrutado sin oposición de la autoridad, o de terceros, por un período mayor de 20 años; (2) al sostener como válida la admisión por

[2] Al comenzar su opinión el tribunal inferior hace constar los motivos por los cuales se ha demorado la resolución final del recurso. Copiados textualmente éstos son los siguientes:

"Aunque esta apelación se interpuso en julio de 1942, transcurrieron algunos años antes de que la misma quedara perfeccionada. En octubre (3) de 1945 todas las partes personadas en autos radicaron una estipulación sometiendo el caso a la consideración y resolución del Tribunal mediante alegatos que presentarían posteriormente. El de la apelante fué radicado en marzo 25 de 1946. A pesar de ello, continuó el caso pendiente hasta que finalmente se señaló, por primera vez ante nosotros, una vista para el día 28 de septiembre de 1950. Concedimos diez días a los interventores para radicar el suyo y treinta días a la Comisión recurrida para hacer lo propio. En 2 de febrero de 1951, fecha en que se radicaron estos alegatos, el caso ha quedado sometido a nosotros, listo para ser considerado y resuelto."

la Comisión de evidencia impertinente, irrelevante e incompetente, consistente en certificaciones en relación, expedidas por funcionarios sin autoridad para ello, de operaciones hidrométricas o llamados aforos practicados en el río Guayanilla por la extinta Utilización de las Fuentes Fluviales de Puerto Rico, que no constituyen documentos públicos, ni copia literal y exacta del original de documentos públicos, o asientos en libros o registros públicos u oficiales practicados de acuerdo con la ley; (3) al sostener como válida la actuación de la Comisión ordenando la reapertura del caso después de haber sido definitivamente cerrado y terminado el juicio; (4) al sostener como válida la actuación de la Comisión denegando a la opositora apelante una oportunidad razonable para examinar y presentar el remanente de los llamados aforos presentados por los peticionarios y enmendados por éstos después de terminado el caso, con el objeto de que la Comisión tuviese conocimiento total de los mismos; (5) al sostener la resolución de la Comisión otorgando la franquicia a base de una petición completamente insuficiente en derecho y, por ende, sin jurisdicción; y (6) al desestimar la apelación y no revocar la resolución de la Comisión.

Los errores señalados no han sido cometidos. En cuanto al primero bastará decir que en su resolución de 30 de junio de 1942, a virtud de la cual declaró con lugar la petición, la Comisión de Servicio Público hizo constar de manera clara y enfática que no era ella la llamada a resolver la cuestión de prescripción suscitada por la opositora. Sus palabras textuales a este respecto fueron:

"Aplicando las propias alegaciones y citas de jurisprudencia de la opositora, se puede decir que no es la Comisión de Servicio Público la que debe resolver si tal o cual persona posee, por título de prescripción, determinadas aguas, correspondiendo tal cosa a los tribunales judiciales, o sea: que teniendo la opositora ciertas concesiones administrativas para ciertas aguas y negándosele por la opositora, correctamente, facultad para determinar cualquier derecho adquirido por prescripción, por no ser cuestión administrativa y sí judicial, mal puede negarse a

594

dar aguas sobrantes a otros necesitados de ellas porque se le diga y alegue que, además de una concesión para cierta cantidad de aguas, se le respete en lo restante de ellas hasta su totalidad porque se ha adquirido por uso continuado de más de veinte años. La resolución de tal cosa será judicial, que, como dice la opositora, no debe hacer la Comisión de Servicio Público." [3]

▮▮▮ Discutiremos conjuntamente los errores segundo, tercero y cuarto. Así lo hacen los propios apelantes. Siendo la Comisión de Servicio Público un organismo administrativo —*En el asunto de la White Star Bus Line, Inc.* 53 D.P.R. 615, 621—cuando ejerce funciones cuasi judiciales, como en el presente caso, no tiene que ceñirse a las reglas de evidencia y puede proceder con mayor liberalidad que los tribunales de justicia. 36 Harv. L. Rev. 405 y 583, y 55 Harv. L. Rev. 364. Su actuación al admitir o rechazar prueba indebida sólo da, sin embargo, lugar a revocación cuando ha perjudicado derechos fundamentales de las partes. *En el asunto, etc. De Hermina Colón Vda. de Semidey,* 59 D.P.R. 248; *Santiago* v. *Comisión de Servicio Público,* 37 D.P.R. 500; *Nor. Pacific* v. *Dept. Public Works,* 268 U.S. 39, 69 L. ed. 836. No creemos que en este caso al admitirse las certificaciones mencionadas se cometiera error perjudicial alguno a la opositora. Además, se desprende de los autos que ésta tuvo amplia oportunidad para examinar las mismas y para presentar en oposición cualesquiera pruebas que hubiera deseado.

▮▮▮ Tampoco fué error del tribunal inferior resolver

---

[3] Sobre la cuestión así suscitada por la opositora véanse el artículo 254 de la Ley de Aguas (Estatutos Revisados de 1911, secciones 2387, 2640); *Trujillo & Mercado* v. *Sucesión Rodríguez,* 22 D.P.R. 296 en el cual dijimos:

"Nosotros creemos que la apelante ha dejado completamente de establecer un derecho exclusivo a las aguas del río Guayanilla o que probara alguna otra cosa fuera del hecho de que se le había concedido un derecho a tomar aguas de tal río. ...el derecho claro de la demandante a tomar 183½ litros por segundo únicamente surgió en 1908, por concesión hecha por el Consejo Ejecutivo."

*Trujillo, Mercado & Co.* v. *Rodríguez,* 16 D.P.R. 125, 132; *Trujillo & Mercado* v. *Succession of Rodríguez,* 233 Fed. 208. *Cf. Pueblo* v. *Rojas,* 53 D.P.R. 121, 136; *Pueblo* v. *Dimas,* 18 D.P.R. 1061.

que la Comisión procedió acertadamente al autorizar la reapertura del caso con el propósito de permitir a los peticionarios presentar certificaciones de los aforos que, a juicio de ellos, se ajustaban más a derecho. En realidad la única adición introducida a las certificaciones previamente presentadas fué la de la palabra "fiel", a fin de que se leyera que las mismas eran "una copia *fiel* y exacta de una parte del original." En todo lo demás las nuevas certificaciones eran idénticas a las anteriores. El autorizar que se reabra un caso con el propósito de dar a una parte la oportunidad de ampliar su prueba es cuestión que cae enteramente dentro de la sana discreción del tribunal sentenciador o del cuerpo administrativo o cuasi judicial que juzga la controversia. *Franceschi* v. *Claudio Elena*, 51 D.P.R. 495. Habiéndose limitado la reapertura del caso al ofrecimiento de las certificaciones así corregidas, habiendo ocupado la silla de los testigos el suscribiente de las nuevas certificaciones y habiendo tenido la opositora oportunidad de contrainterrogarle, como le contrainterrogó, en relación con ellas, tampoco creemos que fuera error del tribunal a quo resolver que la Comisión no abusó de su discreción al reabrir el caso y admitir en evidencia las certificaciones corregidas. Véanse *Camacho* v. *Balasquide*, 19 D.P.R. 590, 604; *United States* v. *Abilene & So. Ry. Co.*, 265 U.S. 274, 68 L. ed. 1017.

█ Una vez admitidas las certificaciones corregidas la opositora solicitó un término de seis semanas para hacer un estudio acabado y minucioso de todos los aforos practicados por Fuentes Fluviales en el río Guayanilla. La Comisión rehusó acceder a ello y estuvo dispuesta a conceder a la opositora tan sólo un término de cinco días. El sostener tal negativa de la Comisión, como se ha visto, sirve de fundamento al cuarto error señalado. Según hemos indicado, las vistas ante la Comisión fueron bastante prolongadas. La petición interesando la concesión de la franquicia fué radicada en 2 de abril de 1941. Se celebraron vistas en 14 de mayo de 1941; el 8, 9, 20 y 22 de enero; el 2, 3, 4 y 13 de febrero;

el 24 de abril; el 26 de mayo; y el 2 de junio de 1942. No fué hasta esta última fecha que la opositora solicitó el referido término de seis semanas para hacer un estudio minucioso y acabado de las lecturas de todos los aforos practicados. Los autos demuestran que durante las vistas la Comisión fué liberal por demás con las partes y que las mismas se prolongaron innecesariamente debido a dicha liberalidad. También que casi desde el comienzo de las vistas la opositora tuvo conocimiento de que los peticionarios ofrecerían, como ofrecieron, en evidencia certificaciones relativas a los aforos practicados, y que no fué hasta después de finalizado el caso y de reabierto el mismo que la opositora insistió en que se le concediera el plazo adicional que interesaba. No creemos, en verdad, que el tribunal inferior errara al sostener la actuación de la Comisión a este respecto.

██ Finalmente diremos que un examen de la petición originalmente radicada ante la Comisión no nos convence de que tal petición fuera insuficiente en derecho. Por el contrario, creemos que la misma está claramente concebida y que expone en debida forma el derecho que se solicita. Además, la autoridad de la Comisión para conocer de tal solicitud de franquicia es innegable. *Baetjer* v. *Corte*, 58 D.P.R. 422, 427; *Landrón* v. *Quiñones*, 72 D.P.R. 86; *Santiago* v. *Comisión de Servicio Público*, supra.

Por las consideraciones anteriores el sexto error señalado tampoco fué cometido.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Negrón Fernández no intervino.